344 N.E.2d 61 (1976)
STATE of Indiana On the Relation of Indianapolis-Marion County Building Authority and Oscar Taylor, As General Manager of the Indianapolis-Marion County Building Authority, Relators,
v.
SUPERIOR COURT OF MARION COUNTY, Room No. 1, and Paul R. Lustgarten, As Judge of the Superior Court of Marion County, Room No. 1, Respondents.
No. 875S197.
Supreme Court of Indiana.
March 15, 1976.
*62 Malcolm C. Mallette, Indianapolis, for relators.
Marshall E. Williams, Indianapolis, for respondents.
DeBRULER, Justice.
This is an original action in this Court for temporary and permanent writs of mandate and prohibition to compel the respondent court to grant a change of judge. Both temporary writs were granted.
The respondent judge entered the following order for installation of telephone facilities:
"WHEREAS, it has come to the Court's attention that the existing telephone facilities available to the Court are old and in poor condition and in need of repair and modernization; and
WHEREAS, the lack of modern and efficient telephone facilities is interfering with the efficient administration of the Court's business; and an emergency exists for the correction thereof before the Court's jury calendar in the fall of 1975; and
WHEREAS, it is the Court's duty to provide for and maintain efficient administration of the Court's business; and
* * * * * *
WHEREAS, the Court's own preliminary investigation has provided reasonable grounds for the Court to believe that modern and efficient telephone facilities can be made available for the Court, without undue expense by purchasing the service and equipment requested by the Court and described on the Request Form attached hereto and marked Exhibit A;
WHEREAS, the Indianapolis-Marion County Building Authority and the Department of Administration of the Consolidated City of Indianapolis have asserted authority over the courtrooms and facilities of the Courts and have declined, failed and refused to provide such improved facilities requested by the Court; and
* * * * * *
IT IS, THEREFORE, ORDERED that the Indianapolis-Marion County *63 Building Authority, by its General Manager, Oscar Taylor, and the City of Indianapolis, Department of Administration, by its director, Fred L. Armstrong, shall forthwith purchase the service and equipment requested by and described by the Request submitted by the Court (Exhibit A, attached), and shall do all things necessary to cause the installation and completion thereof prior to September 1, 1975."
The exhibit to the order contained the specifications for the requested equipment. They called for the installation of a local phone at the judge's bench, touch tone phones at existing stations with wink hold and lights on local. An indication exists in the exhibit that the installation cost for the job was $150.00, and that the new installation would result in an increase in monthly charges of $10.75.
Upon being served with the order, relators responded by filing a petition for trial on the merits and a motion for change of judge. Relators asserted that the petition and motion were being filed pursuant to the provisions of Ind. Code § 34-5-1-1 (Burns Supp. 1975). That statute provides:
"Whenever a court, except the Supreme Court or the Court of Appeals, orders either a municipality, a political subdivision of the state, or an officer of either, to appropriate or to pay unappropriated funds for the operation of the court, or court related functions, the legislative body, the chief executive officer or the affected officer, hereinafter called the petitioner, may within ten [10] days of receipt of notice of the order, request a trial on the merits of such order by filing a petition with the county clerk.

The trial shall be without a jury before the court that made the order. There shall be no change of venue from the county. The petitioner is entitled to a change of venue from the judge if he files such a motion within five [5] days after filing the petition.

The court shall notify the Supreme Court of a request for a change of venue from the judge, and the Supreme Court shall then appoint a judge or attorney to act as special judge. The special judge shall not reside in the county in which the petition is to be tried, nor in a county bordering on such county. If the appointed judge fails to qualify within seven [7] days after he receives notice of his appointment, the Supreme Court shall again follow the same procedure until an appointed judge does properly qualify.
The decree of the judge shall be deemed a final judgment and may be appealed.
The petitioner may not be cited for contempt of the court's order until the decree becomes final." (Emphasis added.)
Respondent denied the motion for change of judge, construed the petition to be a common law petition to modify and set aside the order, and set a hearing date on the petition. In so ordering, respondent declared § 34-5-1-1, supra, to be unconstitutional as a violation of the separation of powers.
In the view we take of this case, respondent judge acted within his constitutional jurisdiction in denying the motion for change of judge and in construing the petition as he did. But, that part of the order declaring the statute to be unconstitutional as in violation of the distribution of powers principle contained in Art. 3[1] of the Indiana Constitution, and of the grant of judicial authority to courts contained in *64 Art. 7, § 1[2] of the Indiana Constitution, cannot be permitted to stand as the statute is subject to an application wholly consistent with those constitutional provisions.
Over the years, this Court, in its opinions, has circumscribed a segment of judicial authority and called it inherent and incidental. Courts are vested with an inherent power to order, in emergency situations, the removal of obstacles to the due administration of justice in the court. Board of Commissioners of White County v. Gwin, Sheriff et al., (1893) 136 Ind. 562, 36 N.E. 237. It arises by necessary implication from Art. 1, §§ 12 and 13[3] and Art. 3 and Art. 7, § 1 of our Constitution. Noble County Council etc. et al. v. State ex rel. Fifer, (1954) 234 Ind. 172, 125 N.E.2d 709. One well recognized example of it is the jurisdiction of a judge to mandate that the court be provided with an adequate plant in which to function. Board of Commissioners of Benton County v. Thompson, (1855) 7 Ind. 265; Board of Commissioners of Vigo County v. Stout et al., (1893) 136 Ind. 53, 35 N.E. 683.
A court's inherent power to require that money for fixtures and staff be provided is never to be used in an arbitrary, extravagant or unwarranted manner. Board of Commissioners of White County v. Gwin, Sheriff et al., supra. It is properly used to "forestall foreseeable difficulties which are imminently threatening the function of his court." Carlson et al. v. State ex rel. Stodola, (1966) 247 Ind. 631, 220 N.E.2d 532. Courts are always reluctant to exercise this type of authority and do so only after resort to requests and reason have failed to achieve the needed result of removing an impediment to the court's operation. However, in a proper case, wherein further delay in achieving a necessary result is intolerable, the court has a duty imposed upon it by the Constitution to act and to require that a necessary thing be done. When faced with such circumstances, a court proceeds by initiating a summary proceeding, the first step of which is to make findings of fact from personal observations and knowledge as was done in this case. The party against whom the order is made is not without remedy, but may move to modify the order, have a summary hearing thereon, and if that is unsuccessful, appeal the decision. The Board of Commissioners of Vigo County v. Stout et al., supra. And this right of appeal has proven effective. In at least two cases, this Court has overturned such orders. Board of Commissioners of Benton County v. Thompson, supra; Board of Commissioners of White County v. Gwin, Sheriff et al., supra.
The respondent court was faced with a situation similar in many ways to that considered by this Court in Board of County Commissioners of Vigo County v. Stout et al., supra. In that case there were two ways to get to the courtroom which was located on the second floor of the courthouse. One could ride the elevator which was close to the courtroom, or use one of two stairways located sixty feet from the entrance to the courtroom. The elevator was a great convenience to those needing to reach the court. The county *65 commissioners, desiring to cut down on the expenses of operating the courthouse, shut the elevator down. The judge ordered the sheriff to operate the elevator. This Court held that the trial judge acted within his inherent power in ordering the sheriff to operate the elevator. The Court said:
"It was the inherent right of the court, and it had the power, to provide a suitable court room, and, if that were already provided, to secure also fit and convenient means of using such court room, including facilities for access thereto, suitable and necessary for the court itself, and in keeping with the character and plan of the building." 136 Ind. at 62, 35 N.E. at 686.
In Stout, the stairway existed as a means of reaching the courtroom, but it was deemed to be so inconvenient as to constitute an impediment to the operation of the court sufficient in magnitude to warrant the invocation by the court of its inherent constitutional authority. In the case before us, the respondent court found that the old and faulty telephone facilities were an interference with the efficient operation of the court, and that immediate action had to be taken. Given the obvious importance of a highly efficient telephone system to the functioning of a modern court, to judges, jurors, parties, attorneys and witnesses and others who may have business with the court, the respondent judge was within his jurisdiction in invoking his inherent judicial powers and making the order quoted above. Whether or not that order is arbitrary, extravagant or unwarranted cannot be determined in this original action.
That respondent judge was exercising inherent judicial power to order a necessary improvement for the court cannot be doubted, however, the crux issue presented by this case remains, namely, whether the exercise of the right to a change of judge by relators, pursuant to the statute, was a constitutionally impermissible interference with the regular judge's exercise of inherent judicial authority. At the outset we observe that the inherent power of a court is not limited to mandating money for necessary plant and personnel. In Board of Commissioners of White County v. Gwin, Sheriff et al., supra, this Court observed:
"The power to repair the court room of the circuit court is akin to the power to punish for contempt. Like the power to punish for contempt, it springs out of absolute necessity,  out of that highest law of nature, self-preservation,  and does not belong to the general jurisdiction, but is incidental to such jurisdiction, and is inherent in the court, and was so when the circuit courts were first called into existence by the legislature." 136 Ind. at 579, 36 N.E. at 243.
The authority to mandate for necessary items falls within the same class as the authority to summarily try and punish for direct criminal contempts which interfere with the ongoing performance of court business. In Dale v. State, (1926) 198 Ind. 110, 150 N.E. 781, upon considering whether a statutory right to a change of judge existed in direct criminal contempt cases, this Court extended its reasoning beyond mere statutory interpretation and concluded that the right to change of judge is wholly incompatible with the authority of a judge to summarily try and punish for direct criminal contempts. The Court reasoned:
"It may not be successfully denied that the trial and punishment for a direct contempt is entirely summary, which necessarily implies that the court acts upon the instant in pronouncing the punishment upon such an offender. The law recognizes no excuse why a change of venue ought to be granted from the presiding judge in such a summary proceeding. Much has been written that this power which resides in the court may be abused and is liable to become arbitrary, yet the courts have consistently held that *66 this is no reason why the power to punish for contempt should not exist. And the few instances in which this power has been used by the court show that it has been wisely placed and that it may be safely left entirely in the hands of the courts. We have heretofore held that the cases at bar are criminal contempts, and also that direct contempts of the court are tried by the court and the judge thereof summarily. But it is well recognized as now settled that criminal contempts of the courts as well as direct contempts are to be tried summarily by the court. The interference in the long-established practice of the court in trying such cases summarily would be violent, should the change be made to the regular course and way of procedure as followed in the ordinary civil or criminal cases, in which the cases of contempt would be subject not only to removal from the judge by a change of venue, but to removal from the county; also subject to delay in the trial usually accorded to parties in civil actions. Were the change to be made to civil procedure to any extent, the courts would lose that power so long recognized to preserve the dignity of the court and the good name thereof." 198 Ind. at 121-22, 150 N.E. at 785.
More recent cases have also recognized the probable constitutional infirmity that would exist in a statute which sought to grant a change of judge in summary contempt proceedings. State ex rel. Neal v. Hamilton Circuit Court, (1966) 248 Ind. 130, 224 N.E.2d 55; Garlin v. State, (1975) Ind. App., 325 N.E.2d 515. We do not decide the constitutionality of any such hypothetical statute here. But, the reasoning of the Dale case is applicable and persuasive here. The mandate proceeding initiated by respondent in this case is a summary proceeding which has the same basic purpose as a summary contempt proceeding, namely, the preservation of the continued operation of the court. In such summary proceedings, the delay and withdrawal of jurisdiction occasioned by a change of judge does not have a mere routine procedural effect as contended by relators. To delay and to change the locus of decison from the sitting judge to a special judge in a summary proceeding, is to alter the nature of that proceeding in radical and obvious ways, and to make it ineffectual in accomplishing those purposes which rendered its summary nature fair and reasonable. We, therefore, hold that the statutory provision for change of judge in § 34-5-1-1, supra, cannot constitutionally be invoked as a matter of right in cases such as the one at bar wherein substantial interference with a trial court's operation presently exists, requests for assistance have proven fruitless, and immediate remedial action by the trial court is necessary. The trial court was correct in maintaining jurisdiction to complete this summary mandate proceeding.
This does not mean, however, that the statute is unconstitutional. There are many circumstances in which this statutory provision would be properly applied. For example, whenever substantial capital improvements to the courtroom or substantial salary increases are needed, but can await a delayed decision by a special judge, a change of judge should be granted if requested.
Upon the foregoing basis, the temporary writs are dissolved and the permanent writs denied.
HUNTER and PRENTICE, JJ., concur.
ARTERBURN, J., dissents with statement in which GIVAN, C.J., concurs.
ARTERBURN, Justice (dissenting).
I dissent because I do not feel an emergency exists here to the extent that a Special Judge cannot be appointed as provided by statute to hear the controversy.
GIVEN, C.J., concurs.
NOTES
[1] "The powers of the Government are divided into three separate departments: the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."
[2] "The judicial power of the State shall be vested in one Supreme Court, one Court of Appeals, Circuit Courts, and such other courts as the General Assembly may establish."
[3] "All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course law. Justice shall be adminstered freely, and without purchase; completely, and without denial; speedily, and without delay."

"In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor."