**In the Matter of EL PASO COUNTY COURTHOUSE.**

**No. 08–89–00004–CV.**

Court of Appeals of Texas, El Paso.

Feb. 8, 1989.

Motion for Rehearing Withdrawn March 8, 1989.

James P. Allison, Stan Reid, Allison & Associates, Austin, for appellant.

Gordon Stewart, Schwartz, Earp, McClure, Cohen & Stewart, El Paso, for appellee.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

PER CURIAM.

This is an appeal by three members of the El Paso County Commissioners' Court from an order purporting to be that of the Judge of the 205th Judicial District Court, bearing the docket number 88–12126, dated December 5, 1988. The order is also signed by eight other El Paso District Judges, all five El Paso County Court at Law Judges, one Justice of the Peace, four Court Masters and the El Paso Criminal Law Magistrate. In its recitals, the order purports to be an order of each judicial officer in his individual capacity, as well as an order of the Judge of the 205th District Court in his capacity as Administrative Judge of the El Paso Council of Judges and an order of the Judge of the 210th District Court in his capacity as Administrative Judge of the 6th Administrative District of Texas. The validity of such a consolidated order is of some concern. Cases cited by the El Paso County Attorney in support of the order reflects separately prepared, docketed and signed orders in similar situations involving mandates by multiple judicial officers. See e.g. *Mays v. Fifth Court of Appeals,* 755 S.W.2d 78 (Tex.1988). We do not attempt to resolve this concern since it is not dispositive of the appeal given our conclusions as to the other issues presented and addressed below.

The challenged order set out certain findings of the signatory judges with regard to the current condition of the existing El Paso County Courthouse, its unsuitability for the efficient carrying out of the courts' functions, the 1987 passage of a $35,000,-000.00 bond issue by the voters of El Paso for the purpose of constructing a new courthouse, the initial steps taken by the Commissioners' Court in pursuing the construction of a new courthouse, and the present controversy within the Commissioners' Court over the location and design of the new courthouse. The order concludes by directing the Commissioners to:

[I]ssue forthwith the necessary resolutions and orders to accept the lowest and best bid for the construction of the El Paso County Courthouse at 500 E. San

Antonio Street, [the present location] ... and such other and further orders as may be necessary for the expeditious completion of the new El Paso County Courthouse. [Emphasis added].

Three Commissioners gave notice of appeal to this Court. A motion to dismiss the appeal has been filed on behalf of the Judges arguing that the order is not subject to challenge until such time as its enforcement is sought by contempt action. We find that the appeal must indeed be dismissed, albeit for a different reason.

We have before us a memorandum prepared by the El Paso County Attorney at the behest of one of the Appellant Commissioners. We have accorded this memorandum the status of an amicus curiae brief. It supports the validity of the lower courts' order in a manner fairly reflecting the bases identified by the Judges in their express findings. Four distinct case law justifications for such an exercise of control by the judiciary have been identified. One, in which there is a statutory right of appeal from a commissioners' court action, is nonapplicable here and has not been urged. The other three will be discussed separately.

■ The County Attorney first suggests that courts may intervene in the conduct of the commissioners' court where the latter has failed to perform a statutory, nondiscretionary (ministerial) duty. Two examples are reflected in *Mays v. Fifth Court of Appeals*, 755 S.W.2d 78 (Tex.1988) and *Vondy v. Commissioners Court Of Uvalde County*, 620 S.W.2d 104 (Tex.1981). This type of judicial intervention (*Mays*) or review (*Vondy*) necessitates that the statutory obligation be free of any discretion accorded the commissioners. The two examples clearly bracket the scope of judicial action in such a situation. In *Mays*, the district judges were empowered by the legislature to set their court reporters' salary raises as long as they did not exceed ten percent. The judges ordered a raise of five percent, and the commissioners refused to comply to the letter of the orders. The Supreme Court concluded that the legislative grant of authority to the judges and the subsequent judicial order imposed a statutory duty not subject to any residual discretion on the commissioners. The commissioners' efforts to obtain mandamus relief ultimately failed in the Supreme Court.

In *Vondy*, a constable sought mandamus to compel the commissioners of Uvalde County to set a reasonable salary for his office. The district court denied relief. The Court of Civil Appeals vacated the judgment and dismissed the cause for failure to join one commissioner as an indispensable party. *Vondy v. Commissioners Court Of Uvalde County*, 601 S.W.2d 808 (Tex.Civ.App.—Eastland 1980). The Supreme Court ultimately afforded relief, finding a constitutional mandate that constables be paid a reasonable salary:

Furthermore, we conclude that the commissioners court must set a reasonable salary. *While a reasonable salary would be a determination for the commissioners court*, Vondy is entitled to be compensated by a reasonable salary. [Emphasis added]. 620 S.W.2d at 108–109.

620 S.W.2d at 108–109. Thus, the statutory duty in *Mays* was ministerial to the extent of a specific salary increase, while in *Vondy* the ministerial, non-discretionary duty extended only to the setting of a reasonable salary, and any determination within that latter guideline would involve discretion. The specificity and degree of judicial intervention in the commissioners' court function was consequently tailored in each case to coincide with, but not exceed, that aspect of the duty which was non-discretionary.

This Court has applied the *Mays–Vondy* rationale in reviewing the actions of county commissioners. In *Douthit v. Ector County*, 740 S.W.2d 16 (Tex.App.—El Paso 1987, writ denied), we not only held, as in *Vondy*, that the commissioners' court has a statutory, ministerial duty to set a reasonable salary for constables, but also determined that setting a salary of $1.00 per annum was unreasonable and an abuse of discretion.

In this case, the commissioners are obligated to provide a courthouse. Tex.Local

Gov't.Code Ann. sec. 291.001 (Vernon 1988). Beyond that simple expression, the duty is replete with discretion, although subject to some form of review by the courts as discussed below. *Cosby v. County Commissioners Of Randall County*, 712 S.W.2d 246 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.); *McWilliams v. Commissioners' Court Of Pecos County*, 153 S.W. 368 (Tex.Civ.App.—El Paso 1913, no writ). An intrusion into the carrying out of such discretionary duty will not, however, be justified under the *Mays* rationale. In *County Commissioners Court Of Dallas County v. Williams*, 638 S.W.2d 218, 224 (Tex.App.—Eastland 1982), writ ref'd n.r.e., 655 S.W.2d 206 (Tex.1983), the Eastland Court correctly noted that: "There is no statutory standard or guideline as to the size or specific facilities to be included in district courts." There, suit was brought by a practicing attorney challenging courtroom space allocation orders of the commissioners' court. The trial court held for the plaintiff and issued an order analogous to that before us, reciting findings of the inadequacies of the existing space allocations, reassigning various courts to different quarters, enjoining renovation efforts initiated by the commissioners and requiring expenditure of funds to comply with the order. The Court of Appeals overturned the order finding that none of the three justifications presently tendered to this Court (enforcement of a statutory ministerial duty, prevention of arbitrary action or gross abuse of discretion, and inherent power of judicial self-preservation) had been established in that case. The duty, while statutory, was not ministerial and non-discretionary. The action of the commissioners, while subject to disagreement, was not made without reference to valid public considerations. The degree of judicial intrusion into the commissioners' court function was in itself excessive and arbitrary. It should be further noted that the offending order in *Williams* emanated only after notice and a contested evidentiary hearing, neither of which was afforded by the signatory judges in this case.

The County Attorney has attempted to weave the bare statutory duty to provide "adequate" courthouse facilities into a whole cloth of statutory, ministerial duty as to site and design by interweaving the legal consequences of the bond election, publicity attending the bond election, and subsequent expenditures in condemnation and architectural fees. In essence, the argument is that by exercise of some discretion already, all further discretion is lost and the duty to pursue an initial discretionary path has become ministerial. That is an unwarranted and unsupported extension of the *Mays–Vondy* rationale. Additionally, it is founded upon speculative interpretation of the expectations of anonymous voters who assented to the bond issue. Official commissioners' court action is taken in court by resolution and order, not by individual interviews in newspapers. The challenged order cannot be sustained upon any theory of compelling the performance of a statutory, *ministerial* duty.

The County Attorney next suggests that the judiciary may intervene in cases such as this where the commissioners court has acted arbitrarily or has clearly and grossly abused its discretion. The County Attorney relies upon the express supervisory authority of the district court contained in Article V, Section 8 of the Texas Constitution and Section 24.020 of the Tex. Gov't.Code Ann. (Vernon 1988). It should be noted that no case proffered by the County Attorney, or found by this Court, which turns upon such theory involved an ex parte, summary order of this nature. In fact, with the exception of *Mays*, the same is true with regard to the first theory offered in support of the order. The *Mays* procedure may perhaps be justified on the basis that where a true statutory, ministerial duty exists, notice flows from the statute itself, factual issues are reduced to defensive matters which may be subsequently raised in response to an enforcement action and the acting court is confronted with a clear legal issue alone. Where those targeted by such an order, as in the present case, are charged with arbitrary action and abuse of discretion, the controversy is rife with factual issues. These should be resolved by evidentiary

hearing with adequate prior notice. Every case cited by the County Attorney, save *Mays,* to include the inherent power cases discussed below, involved some vehicle for evidentiary contest. That was not afforded here. The commissioners' action is not presumed to be arbitrary and abusive of their discretion. Hence, their efforts are at least arguably taken in the best interest of the public. To deny them and their position due process safeguards of notice and evidentiary hearing is to deny due process to the public which they represent. The second theory proffered by the County Attorney is without merit, and in this regard the order is void for denial of procedural due process.

We now turn to the theory of inherent judicial power, with its attendant aspects of self-preservation and separation of powers. The existence of such power is beyond question. What is in question is the scope of such power and the proper procedure to be followed in its exercise. We would agree that on this basis action may be initiated by the aggrieved court itself without waiting for an outside litigant with standing to institute legal action. That does not, however, mean that such action may also, in all instances, be taken without affording prior notice and hearing to those targeted by the judicial order. The cases seem to reflect that the power to initiate a summary order without the necessity for prior notice and hearing is a function of the severity and immediacy of the need, the clarity of the ultimate right, the level of pecuniary expenditure entailed and the degree of overlap with or intrusion into the discretionary function of the commissioners' court.

Several of the cases reflect a judicial authority in certain circumstances to act sua sponte and without prior notice and hearing. This is suggested in *Mays,* but there the primary ruling turned upon failure to perform a statutory, ministerial duty. Justice Spears' concurring opinion is, with all due respect, dictum. Furthermore, in *Mays* the four factors identified in the preceding paragraph militated in favor

of a summary order under inherent power. That is not the case here.

In *Vondy,* there was a litigant, the unpaid constable, and the matter was developed by open evidentiary hearing. The same was true in *Williams.*

The County Attorney has referred to cases outside this jurisdiction. Of particular interest is *Board Of Comm'rs of White County v. Gwin,* 136 Ind. 562, 36 N.E. 237 (1894). In that case, a circuit court judge, without prior notice or hearing, entered an order condemning the courtroom as unsafe and inadequate to permit the effectuation of the judicial function. He then appointed an architect to prepare and submit plans for repair, approved the resulting plans and ordered the sheriff to pursue such reconstruction. The Indiana equivalent of our commissioners' court sought to enjoin the sheriff from pursuing the necessary contracts. In reviewing the record, the Indiana Supreme Court noted that the lower court's order necessitated an expenditure of at least three times the original cost of the building, and that the new plans called for such a removal of portions of the existing structure as to amount to a destruction of it. In addressing the inherent power of judicial self-preservation, the court ruled:

> But it is contended that, even if this inherent power does exist, it is not an unlimited power, and must be confined to repairs, in the sense of that necessity out of which the power springs, *and that it does not exist to the extent of practically rebuilding or reconstructing the courthouse,* or to the construction of lasting and permanent improvements, such as extensions, additions, and enlargements to the courthouse. We are of opinion that this contention must prevail, because such is the law. [Emphasis added].

36 N.E. at 243. The court concluded that there was no authority for entry of the challenged order and it was therefore void. It must be borne in mind that this conclusion followed a review of an evidentiary record developed in an adversary proceeding with prior notice. In a perfectly similar

factual setting, the order in the case before us emanated in the absence of such due process safeguards. The case cited by the County Attorney does indeed recite the unquestioned doctrine of inherent power, but the details and result of the case are diametrically contrary to his position.

Other cases in which sua sponte judicial action, without prior notice and hearing, have been upheld and reflect satisfaction of the four factors recited above. The challenged orders involved items of relatively small cost, for which a clear judicial right, immediate need, and at least narrow range of executive/legislative discretion existed. See e.g. *State ex rel. Indianapolis–Marion County Building Authority v. Superior Court of Marion County, Room No. 1,* 264 Ind. 313, 344 N.E.2d 61 (1976) (installation of a specifically described telephone system for the court); *O'Coin's Inc. v. Treasurer Of County Of Worcester,* 362 Mass. 507, 287 N.E.2d 608 (1972) (a tape recorder and tapes as a substitute for a trial court stenographer); *State ex rel. Kitzmeyer v. Davis,* 26 Nev. 373, 68 P. 689 (1902) (chairs and a carpet). Even these cases, however, do not reflect an abandonment of due process. The Indiana Supreme Court in *Marion County* stated that the judiciary should be reluctant to exercise its inherent powers and should do so "only after resort to requests and reason have failed to achieve the needed result of removing an impediment to the court's operation." 344 N.E.2d at 64. In response, we note that the judicial findings embodied in the order before us reflect no prior requests, formal or informal, by the judiciary directed to the commissioners. We further judicially notice that the present conditions have existed for a considerable period of time without judicial intervention of any lesser order. We further judicially notice that only the current Judges of the 168th District Court and County Court at Law No. Five are without courtrooms. The latter signed the challenged order; the former did not. Although forced to share a jury room, the Judge of the 65th District Court signed the order, while the Judge of the 41st District Court did not. The Indiana Supreme Court went on to state that where further delay was "intolerable" the judiciary could act "by initiating a summary proceeding, the first step of which is to make findings of fact from personal observation...." *Marion County,* 344 N.E.2d at 64. In this case, save enforcement proceeding by contempt or mandamus, the El Paso judiciary has made this the only step. By contrast, the Indiana case reflects that even when necessity compels such spontaneous judicial action, the party against whom the order is made is not without remedy, but is entitled to an evidentiary hearing and, if necessary, an appeal. That process has in this case not been afforded, and the order is predicated solely upon the express, ex parte findings of the judiciary.

In *District Judges Of the 188th Judicial District v. County Judge,* 657 S.W.2d 908, 910 (Tex.App.—Texarkana 1983, writ ref'd n.r.e.), the Court of Appeals stated:

> While the administrative findings of the courts concerning their own needs must be given proper weight and deference, there are important reasons why they should not be accepted as valid until they have been established by the fact finding process: there is a need to clearly demonstrate to the public that the judiciary is acting fairly and without bias in matters of court funding, and because any departure from the separation of powers mandated by the constitution is so drastic, such a step should be taken only on the basis of a detached and objective finding of essentiality.

In that case, two district judges entered ex parte orders directing the county to pay for a court administrator which they had hired under a claim of inherent power and essential judicial need. They then sought to compel compliance by mandamus in another district court. The denial of such writ was upheld by the Court of Appeals. In the absence of a procedurally established basis for their order it was unenforceable, i.e., void.

These cases do reflect that the separation of powers concept does necessitate a doctrine of inherent judicial power to preserve the judicial function within the tripartite form of government. Such power may

not, however, be exercised in such a fashion as to abrogate the correlative rights of the executive and legislative authorities of our government, for the public is equally protected by the preservation of all three functions. When these inherent powers are properly invoked, upon an adequate basis in a safeguarded process, the action is in effect one of the checks and balances which is at the heart of our governmental system. The temporary suspension of the normal interaction between the branches has the net effect of reinforcing the separation of powers protection, not further eroding it. In taking action, the judiciary must not also abandon those safeguards inherent in its own sphere—namely, procedural due process including notice and hearing.

This Court more than empathizes with the judges who signed this order and the ultimate goal which is sought on behalf of those who work in, visit, rely upon and pay for the county courthouse. We wait for the same two overburdened elevators. Our staff grows pallid in windowless rooms, breathing stale air. For years, they struggled to give meaningful directions to citizens lost in a maze of corridors, trying hopelessly to find the police property office. We freeze in the summer and freeze in the winter; we roast in the summer, we roast in the winter. We store our records in abandoned jail cells, once desperately considered as possible extensions for the law library. The fire hazard is continuously brought home by the plethora of audiovisual warning devices which are but poor compensation for inadequate emergency egress and no sprinkler system. Those on either side of the controversy within the Commissioners' Court are mindful of these conditions and are apparently seeking the best resolution for all concerned. In the absence of an evidentiary record which establishes that the Appellant Commissioners have acted without reason, fraudulently, arbitrarily, in bad faith or with gross abuse of discretion, the judiciary has no power to intrude into their functions. *Garcia v. State*, 290 S.W.2d 555 (Tex.Civ.App.—San Antonio 1956, writ ref'd n.r.e.). The resolution of the controversy rests primarily within the discretionary realm of the commissioners' court. The *Mays* rationale, as expressed by Justice Ray, will not support judicial intrusion. The two other theories suggested by the County Attorney may viably support some degree of judicial intervention, but only upon prior notice and hearing for those officials targeted by the judicial action, and only upon an evidentiary record which supports the type and degree of judicial intrusion which results consonant with the foregoing analysis. Due to the absence of the procedural safeguards noted above and the absence of proper establishment of the predicate factual findings for exercise of inherent powers, the lower court had no jurisdiction to enter the challenged order. It is void. Where the lower court does not have jurisdiction, the proper practice is for the reviewing court to set aside the lower court action and dismiss the appeal. *Sanchez v. Sanchez*, 609 S.W.2d 307 (Tex.Civ.App.—El Paso 1980, no writ).

Accordingly, the order of December 5, 1988, bearing the style: "In the Matter of: El Paso County Courthouse" and the 205th District Court docket number 88–12126, is hereby set aside and the present appeal is hereby dismissed.

## OPINION ON MOTION

On February 8, 1989, this Court issued its opinion in this cause declaring an order entered in No. 88–12126 on the docket of the 205th District Court to be void. That order directed the County Commissioners of El Paso County to accept the lowest and best bid for the construction of the El Paso County Courthouse at 500 E. San Antonio Street.

On February 23, 1989, the Appellees filed a motion for rehearing. The filing of that motion extended the jurisdiction of this Court until final disposition of the case. While that motion was pending, the Honorable Sam Callan, Judge of the 205th District Court, entered a temporary restraining order and show cause order to the El Paso County Commissioners' Court and its individual members commanding them to desist and refrain from rejecting the bids that have been opened with regard to the

construction of the new El Paso County Courthouse facility and to show cause on March 13, 1989, why certain findings by the Council of Judges of El Paso County, Texas, are not correct and why an order should not be issued requiring the El Paso County Commissioners' Court to accept the lowest available bid presented. Such order involves the subject matter of the case pending before this Court on the motion for rehearing filed by the Appellees in this case.

Today, three of the County Commissioners, being the Appellants in this cause, have filed a motion for prohibition, mandamus and injunction asking us to set aside the temporary restraining order and show cause order.

Jurisdiction of the subject matter involved in the case originally filed in this Court must remain in this Court by law until it overrules the motion for rehearing and issues its mandate. *Ranger Insurance Company v. Robertson,* 680 S.W.2d 618 (Tex.App.—Austin 1984), affirmed, 689 S.W.2d 209 (Tex.1985). See Tex.R.App.P. 86 (as to the issuance of the mandate). A writ of prohibition may issue to the trial court forbidding it to proceed to trial before the appellate court has issued its mandate because it did not have jurisdiction of the subject matter at the time it initiated the second proceedings. *Continental Casualty Company v. Street,* 364 S.W.2d 184 (Tex.1963).

*Holloway v. The Fifth Court of Appeals,* — S.W.2d ——, 32 Tex.Sup.Ct.J. 287 (March 4, 1989) is not applicable. This is not an original proceeding. We are not seeking to enforce a decision in an earlier proceeding. The motion has been filed in a pending case in which a mandate has yet to issue. Nor do we seek to protect an earlier judgment of the trial court as did the Fifth Court of Appeals. Just the opposite, we have held the trial court's judgment is void. Even without a writ of prohibition this Court still has jurisdiction of the issues involving the building of a new courthouse as a result of the filing of the motion for rehearing and the trial court may not exercise jurisdiction over that sub-

ject matter until our decision is final and the mandate has issued. *Ranger Insurance Company.*

We are confident the Honorable Sam Callan, Judge of the 205th District Court, will vacate and set aside the temporary restraining order and show cause order forthwith, and the writ of prohibition will issue only upon his failure to do so.