## In re EL PASO COUNTY COMMISSIONERS COURT, Relator.

### No. 08–05–00151–CV.

Court of Appeals of Texas, El Paso.

May 18, 2005.

18

Gonzalo Garcia, El Paso, pro se.

Jose R. Rodriguez, County Atty., El Paso, for Relator.

Robin Collins, Ray, McChristian & Jeans, El Paso, for 210th District Court.

Before Panel No. 5 BARAJAS, C.J., McCLURE, and PARKS, JJ. PARKS, J., sitting by assignment.

## *OPINION*

RICHARD BARAJAS, Chief Justice.

Relator, the El Paso County Commissioners Court, seeks a writ of mandamus directing the Honorable Gonzalo Garcia, Judge of the 210th District Court (Respondent), to vacate an order (1) prohibiting the Commissioners Court from expending monies from two designated capital project fund accounts, and (2) requiring the Commissioners Court to attend an evidentiary hearing for the purpose of judicial fact-finding. We conditionally grant mandamus relief.

## FACTUAL SUMMARY

In 2001 and 2002, El Paso County Commissioners Court issued certificates of obligation in the amount of approximately $65 million to finance numerous projects, including the expansion of the courthouse and a parking garage.[1] The Commissioners Court employed a consultant, Gilbane ECM, to analyze the county's real estate, space, and office needs and use over the next two decades. The consultant produced a report known as the "Gilbane study" or "Gilbane report." In March of 2003, the Commissioners Court voted to move forward with building the courthouse expansion and it indicated that the expansion would be in front of the existing courthouse. The Commissioners Court established a Courthouse Expansion Committee to consider available options for the project. County Commissioner Daniel R. Haggerty chaired the Courthouse Expansion Committee.

The El Paso County Council of Judges[2] also formed a committee to address the courthouse expansion based on concerns that the expansion project would not occur because the Commissioners Court had not moved forward with the project and money set aside for the courthouse expansion was being slowly dissipated. That committee consisted of Respondent, Judge Patricia Macias, Judge Linda Chew, Judge Sam Medrano, Judge Javier Alvarez, and Judge Luis Aguilar. After consideration of various proposals, the judicial committee agreed on a plan for the courthouse expansion project that involved building the expansion in front of the existing courthouse. The Council of Judges adopted the plan on December 16, 2004, and on December 21, 2004, passed a resolution stating that the courts of El Paso County have a need for additional courtroom space. By the resolution, the Council of Judges requested that the Commissioners Court immediately proceed with building the annex extension consistent with the plans drafted by the Council of Judges. The Council of Judges attached building plans to the resolution.

In early 2005, the members of the Commissioners Court Courthouse Expansion Committee, including Commissioner Haggerty, met with various members of county government and members of the Council of Judges Committee, including Respondent, Judge Chew, and Judge Macias to discuss the courthouse expansion project. Respondent and the other judges consis-

---

1. The 2001 certificate of obligation was designated for the courthouse expansion, courthouse parking, park improvements, a regional park, rural parks, an animal shelter, a port of entry in Fabens, coliseum and elections committee equipment, and to pay for a portion of contractual obligations for various profession-al services. The 2002 certificate of obligation identified three projects, the courthouse expansion, a parking garage, and a water works project.

2. The Council of Judges has twenty-five members.

tently expressed their opinion that the Committee should recommend to the Commissioners Court that the additional courthouse space be built in front of the existing courthouse. The Courthouse Expansion Committee had since concluded, however, that the courthouse annex should be built across the street from the downtown county jail, but it had not yet made this recommendation to the Commissioners Court.

The Council of Judges met and discussed various options for asserting its position regarding the courthouse expansion, and ultimately decided that one of the district courts would exercise its supervisory powers over the Commissioners Court. Respondent volunteered for the task, and on March 9, 2005, he entered an order in an attempted proceeding styled *In re: El Paso County Commissioners Court and Courthouse Expansion* (cause number 2005–1688; court-assigned number 210DC–05–CTHSE). Even though no lawsuit has been filed and no hearing has been held, Respondent makes several factual findings purportedly based on the affidavit of the El Paso County Auditor, Edward Dion.[3] Those findings are:

1. In 2001 and 2002, the El Paso County Commissioners Court ordered issuance of certificates of obligation in express anticipation of building a roughly $21 million dollar El Paso County Courthouse expansion.

2. On March 11, 2003, the El Paso County Commissioners Court ordered designation of the front half of the block on which the Courthouse is located as the site to build additional courthouse space. This order instructed the County's Purchasing Agent to work with the County Project Manager to prepare specifications necessary for a Request for Qualification.

3. The El Paso County Commissioners Court commissioned a needs and use assessment report from Gilbane ECM (the "Gilbane Report") at a cost of $144,329.80. The purpose of the "Gilbane Report" was to assess the future real estate needs in light of the County's growth concerns.

4. The "Gilbane Report," among other things, identified the County's needs and options for expansion of the El Paso County Courthouse, including ADA compliance issues, elevators, and expanded space for courtrooms and offices.

5. The courthouse expansion project, previously approved and ordered by the El Paso County Commissioners Court is the most cost effective, efficient and secure plan to meet the growing needs of El Paso County's judicial system.

6. In recent months the El Paso County Commissioners Court has issued orders for the expenditure of funds for various public works projects not directly related to expansion of the county courthouse. Regrettably, the Court finds the funds for these projects come from the previously allocated certificates of obligation specifically set aside for courthouse expansion.

7. The courthouse expansion project referred to in Paragraphs 1 and 2 above cannot be completed if the El Paso County Commissioners Court spends funds previously allocated for expansion of the county courthouse on other projects.

8. The space and equipment needs for the continued safe, effective, efficient and lawful operation of the County's ju-

---

**3.** Dion is appointed by the Council of Judges. Tex.Loc.Gov't Code Ann. § 84.002 (Vernon Supp.2004–05) (providing that in a county with a population of 10,200 or more, the district judges shall appoint a county auditor). With the exception of Findings 5, 6, 8, 9, and 10, all of the findings stated in the order are taken nearly verbatim from Dion's affidavit.

dicial system cannot be met absent immediate action by the El Paso County Commissioners Court. In short, the administration of justice in El Paso County is imminently imperiled by the conduct of the Commissioners Court as outlined above. Further spending of funds allocated for courthouse expansion by the Commissioners Court for *other* projects will effectively vacate the expansion plans. Moreover, this Court believes the Commissioners Court does not have the lawful discretion to spend allocated courthouse expansion funds for unrelated projects. (Emphasis in original).

9. Sound I.R.S. accounting practices relating to expenditure of bond proceeds and arbitrage required the Commissioners Court to expend the funds referred to in Paragraphs 1 and 2 not later than July 22, 2004 (two years from the date of issuance of the Certificates of Obligation). Failure to do so is, at best, unacceptable according to these sound principles; at worst, the practice is potentially unlawful and may negatively impact the County's financial rating.

10. If the potential consequences to El Paso County's governmental administration are not grave enough, the Court is convinced for the purposes of these Orders that the negative impact on the County's taxpayers is simply unacceptable. The Court believes that the failure of the Commissioners Court to timely move forward and build the courthouse expansion will cause actual financial harm to El Paso County property tax payers. Put simply, if built in 2002 the courthouse expansion could have been accomplished within the allocated budget; built today, or in the future, the same project will now cost the tax payers additional hundreds of thousands of dollars, if not more.

Respondent goes on to state that he is "deeply concerned that the Commissioners Court may have acted without reason, fraudulently, arbitrarily, in bad faith or in a manner amounting to a gross abuse of their discretion," but adds that he "makes no finding in this regard, but intends to conduct an evidentiary hearing to gather evidence on these very issues." The order expressly prohibits the Commissioners Court from spending, appropriating, allocating or transferring any monies previously allocated for the courthouse expansion, approximately $22 million, except on motion and hearing before Respondent. Respondent ordered the members of the Commissioners Court to appear at an evidentiary hearing set for April 4, 2005 for consideration of the following issues:

1. Whether the El Paso County Commissioners Court has acted without reason, fraudulently, arbitrarily, in bad faith or in a manner amounting to a gross abuse of their discretion in the handling of the funds for the courthouse expansion;

2. Whether the El Paso County Commissioners Court has acted without discretion when expending monies allocated for courthouse expansion on other matters;

3. Whether the El Paso County Commissioners Court's failure to timely expend allocated funds for courthouse expansion violated sound accounting practices and principles; and

4. Whether the El Paso County Commissioners Court's failure to timely expend allocated funds for courthouse expansion caused financial harm to El Paso County taxpayers.

Respondent's order also indicates that, after hearing the evidence, he would consider whether further actions or orders would be appropriate.

On March 14, 2005, the Commissioners Court filed a motion to recuse Respondent pursuant to Tex.R. Civ. P. 18b(2)(a) asserting that his impartiality might reasonably be questioned. Respondent refused to recuse himself and referred the matter to the Honorable Stephen Ables, Presiding Judge of the Sixth Administrative Judicial Region of Texas. Judge Ables heard the motion on March 21, 2005 and orally denied the motion at the conclusion of the hearing. Judge Ables entered a written order denying the motion to recuse on March 23, 2005.

Following the conclusion of the recusal hearing and Judge Ables' oral ruling, Respondent conducted a status conference attended by the El Paso County Attorney's Office, counsel for the Commissioners Court, and Robin Collins, whom the court had appointed to assist with the gathering and presentation of evidence. He informed those present that the proceeding was "not a lawsuit, and it's basically the Court exercising its inherent power" and ordered that the Rules of Civil Procedure and Code of Criminal Procedure would not apply to allow any form of discovery. However, Respondent determined that the Rules of Evidence would apply, the El Paso County Commissioners would be considered "witnesses," Rule 267 of the Rules of Civil Procedure ("the rule") would be invoked, and subpoenas would be issued pursuant to the *instanter* criminal process. He also informed the attorneys present that he would participate in the examination of the witnesses. Counsel for the Commissioners Court asked Respondent what he believed to be his scope of authority and potential actions he could take at the conclusion of the proceeding. He candidly admitted that he did not know whether he could issue an order which would subject someone to criminal liability or civil contempt or whether he could take other action.

Prior to the date of the evidentiary hearing, the Commissioners Court filed a petition seeking a writ of mandamus and emergency relief. We issued an order staying Respondent's order during the pendency of this proceeding.

## STANDARD OF REVIEW

■ Mandamus will lie only to correct a clear abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding). Moreover, there must be no other adequate remedy at law. *Id.* An appellate court rarely interferes with a trial court's exercise of discretion. A clear abuse of discretion warranting correction by mandamus occurs when a court issues a decision which is without basis or guiding principles of law. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding). With respect to resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Walker*, 827 S.W.2d at 839. The relator must therefore establish that the trial court could reasonably have reached only one decision. *Id.* at 840. With respect to a trial court's determination of the legal principles controlling its ruling, the standard is much less deferential. A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. *Id.*

■ An appellate court will deny mandamus relief if another remedy, usually appeal, is available and adequate. *Street v. Second Court of Appeals*, 715 S.W.2d 638, 639–40 (Tex.1986) (orig.proceeding). Mandamus will not issue where there is "a clear and adequate remedy at law, such as a normal appeal." *Walker,*

827 S.W.2d at 840, *quoting State v. Walker*, 679 S.W.2d 484, 485 (Tex.1984).

## DISTRICT COURT'S SUPERVISORY AUTHORITY OVER COMMISSIONERS COURT

■ The Commissioners Court contends that it is entitled to mandamus relief because the March 9, 2005 order is void and there is no appellate remedy.[4] Before reaching the merits of this original proceeding, we must address Respondent's contention that the petition for writ of mandamus is premature because he has not yet conducted the evidentiary hearing or issued any additional orders. The Commissioners Court, however, is not challenging any future ruling but rather asserts that the March 9, 2005 order is void because the district court's jurisdiction had not been properly invoked. This issue is ripe for review.

As authority for the order, Respondent cited the district court's "inherent constitutional powers to preserve the judicial branch of government, as well as specific constitutional and statutory authority to exercise its '... general supervisory control over the commissioners court ...'." The order specifically cites Article V, Sections 1 and 8 of the Texas Constitution and Sections 21.001 and 24.020 of the Government Code.

### *The Commissioners Court*

■ Article V, Section 1 of the Texas Constitution provides that the judicial power of the state is vested in one Supreme Court, one Court of Criminal Appeals, the courts of appeals, the district courts, the county courts, the commissioners courts, the courts of justices of the peace, and in such other courts as may be provided by law. Tex. Const. art. V, § 1.

The jurisdiction of a particular court is that portion of the judicial power which it has been expressly authorized to exercise by the constitution or statutes. *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex.1979).

■ The Texas Constitution provides that the commissioners court "shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed." Tex. Const. art. V, § 18. Thus, the Texas Constitution establishes the Commissioners Court as the county's principal governing body. *Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 79 (Tex.1997). The powers and duties of the Commissioners Courts include aspects of legislative, executive, administrative, and judicial functions. *Id., citing Avery v. Midland County*, 390 U.S. 474, 482, 88 S.Ct. 1114, 1119, 20 L.Ed.2d 45 (1968); *Ector County v. Stringer*, 843 S.W.2d 477, 478 (Tex.1992). In the exercise of its powers and jurisdiction over county business, the commissioners court has implied authority to exercise broad discretion to accomplish the purposes intended. *Canales v. Laughlin*, 147 Tex. 169, 214 S.W.2d 451, 453 (1948); *Cosby v. County Commissioners of Randall County*, 712 S.W.2d 246, 248 (Tex.App.-Amarillo 1986, writ ref'd n.r.e.).

■ Pertinent to this case, the commissioners court is required to provide a courthouse and offices for county officers at the county seat, as well as other necessary public buildings, and must maintain the courthouse, offices, and other public buildings. Tex.Loc.Gov't Code Ann. § 291.001 (Vernon 1999). The commissioners court has broad discretion and judgment as to when the necessities of a

4. Due to our disposition of Issues One and Two, there is no need to address Issue Three.

county require the building, repairing, remodeling and enlarging of a courthouse. *Cosby,* 712 S.W.2d at 248; *McWilliams v. Commissioners Court of Pecos County,* 153 S.W. 368, 372 (Tex.Civ.App.-El Paso 1913, no writ).

### The District Court's Jurisdiction

Article V, § 8 establishes the jurisdiction of the district courts as follows:

District Court jurisdiction consists of exclusive, appellate and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body. District Court judges shall have the power to issue writs necessary to enforce their jurisdiction.

The District Court shall have appellate jurisdiction and general supervisory control over the County Commissioners Court, with such exceptions and under such regulations as may be prescribed by law.

TEX. CONST. art. V, § 8.

■ With a few narrow exceptions, the legislature has not prescribed procedures for exercising this appellate jurisdiction or supervisory control. *Ector County,* 843 S.W.2d at 479; *Scott v. Graham,* 156 Tex. 97, 292 S.W.2d 324, 328 (1956). The enabling legislation empowering the district court merely repeats the language of Article V, Section 8. TEX.GOV'T CODE ANN. § 24.020 (Vernon 2004) ("The district court has appellate jurisdiction and general supervisory control over the commissioners court, with the exceptions and regulations prescribed by law."); *Ector County,* 843 S.W.2d at 479. However, the scope of the district court's jurisdiction has been defined by case law. *Ector County,* 843 S.W.2d at 479. A party can invoke the

district court's constitutional supervisory control over a commissioners court judgment only when the commissioners court acts beyond its jurisdiction or clearly abuses the discretion conferred upon the commissioners court by law. *Commissioners Court of Titus County,* 940 S.W.2d at 80; *Ector County,* 843 S.W.2d at 479.

Therefore, it is beyond dispute that the district court's jurisdiction includes appellate jurisdiction and general supervisory control over the county commissioners court, and that jurisdiction can only be invoked under the circumstances just described. The issue squarely before us is *how* that jurisdiction is invoked.

### Invoking the District Court's Jurisdiction

■ Drawing a distinction between the district court's appellate jurisdiction and general supervisory control, Respondent asserts that his order is all that is required to invoke the district court's general supervisory power over the Commissioners Court. The Commissioners Court, on the other hand, maintains that a lawsuit or some type of independent equitable action must be filed in the district court in order to invoke the court's jurisdiction under Article V, Section 8 and Section 24.020. We agree with the Commissioners Court.

■ It has long been the law in Texas that a direct equitable action must be filed in the district court in order to invoke that court's jurisdiction to exercise supervisory control of the commissioners court. *See, e.g., Scott,* 292 S.W.2d at 328 (holding that a direct equitable proceeding filed in the district court comes within the power granted by Article V, § 8 and the predecessor of Section 24.020); *Hooten v. Enriquez,* 863 S.W.2d 522, 528 n. 7 (Tex.App.-El Paso 1993, no writ) (noting that a formal action or suit must be filed in order for district court to exercise its superviso-

ry control over the commissioners court); *Atlantic Richfield Co. v. Liberty–Danville Fresh Water Supply District No. 1*, 506 S.W.2d 931, 934 (Tex.Civ.App.-Tyler 1974, writ ref'd n.r.e.) (holding that a plenary suit[5] is required to invoke the district court's supervisory control over the commissioners court); *J.R. Phillips Investment Company v. Road District No. 18 of Limestone County*, 172 S.W.2d 707, 712 (Tex.Civ.App.-Waco 1943, writ ref'd) (holding that the supervisory control of the district court may be exercised through its equitable jurisdiction); *Harris County v. Bassett*, 139 S.W.2d 180, 182 (Tex.Civ.App.-Galveston 1940, writ ref'd) (one aggrieved by an order of a county commissioners court may have the order reviewed by bringing a direct proceeding in the district court for that purpose); *Bird v. Alexander*, 288 S.W. 606, 608 (Tex.Civ.App.-Dallas 1926, no writ) (stating that it is the settled law of this state that the district court's supervisory control may be exercised through the equitable jurisdiction of the district courts); Tex.Atty.Gen. Op. JM–708 (1987) (concluding that a district court may exercise "general supervisory control" over the actions of a commissioners court only when a lawsuit is brought in district court seeking review of the commissioners court's actions). *See also* George D. Braden, *The Constitution of the State of Texas: An Annotated and Comparative Analysis*, Article V, § 8 (Vol. 1 1977).

In support of his argument, Respondent relies on several cases which either cite or apply Section 24.020. Yet, in every one of those cases, except one, the district court's jurisdiction had been properly invoked by the filing of a suit. *See Bentley v. Bunton*, 94 S.W.3d 561, 567 (Tex.2002) (district judge brought defamation suit against host and co-host of call-in talk show televised on public-access channel); *Commissioners Court of Titus County*, 940 S.W.2d at 79 (county treasurer brought declaratory judgment action against county commissioners court and county auditor to challenge decision by commissioners court to assign payroll functions to auditor); *Ector County*, 843 S.W.2d at 478 (constables brought action against county and commissioners court to obtain compensation and expenses for services previously rendered); *Ware v. Miller*, 82 S.W.3d 795, 798 (Tex. App.-Amarillo 2002, pet. denied) (former county constable brought action against county, county judge, and members of the county commissioners court regarding issues of constable's salary, seeking writ of mandamus, actual and exemplary damages, and declaratory relief stating that salary he received was unreasonable and that commissioners court had duty to set reasonable salary); *Commissioners Court of Grayson County v. Albin*, 992 S.W.2d 597, 598 (Tex.App.-Texarkana 1999, pet. denied) (developer filed action for writ of mandamus to compel county commissioners court to grant his request to file revised plat of subdivision); *Hooten*, 863 S.W.2d at 525 (county clerk brought action seeking declaration that actions of county commissioners amending clerk's budget were illegal). None of these cases support Respondent's argument that it is not necessary to file a suit to invoke the district court's jurisdiction under Article V, Section 8 and Section 24.020.

Respondent also relies on this Court's decision in *In the Matter of El Paso County Courthouse*, 765 S.W.2d 876 (Tex.App.-El Paso 1989, no writ). There, several judges entered an order similar to the

---

5. A "plenary suit" is an action that proceeds on formal pleadings under rules of procedure.

Black's Law Dictionary 1448 (7th ed.1999).

order entered by Respondent in that it made findings regarding the condition of the then-existing county courthouse, its unsuitability for the courts' functions, the passage of a $35 million bond issue for the purpose of constructing a new courthouse, the initial steps taken by the commissioners court in pursuing construction of a new courthouse, and the controversy within the commissioners court over the location and design of the new courthouse. *Id.* at 877. The order directed the commissioners court to issue whatever resolutions and orders necessary to the expeditious completion of the new courthouse. *Id.* at 877–78. Three of the county commissioners appealed.[6] In contrast with the position taken in the instant case, the El Paso County Attorney filed a brief on behalf of one of the other commissioners and took the position that there were four distinct bases which authorized the courts to intervene and issue the order. First, the County Attorney argued that the courts could intervene in the matter since the commissioners court had failed to perform a statutory, nondiscretionary duty to provide a courthouse. *Id.* at 878–79. We rejected that argument because the commissioners court's duty to provide a courthouse is "replete with discretion." *Id.* at 879.

Second, the County Attorney asserted in *In re El Paso County Courthouse* that the district court had authority to intervene under Article V, Section 8 and Section 24.020 because the commissioners court had acted arbitrarily and had grossly abused its discretion. *Id.* We found that the order was void because the commissioners court had not been given an opportunity for an evidentiary hearing, and thus,

had been denied procedural due process. *Id.* at 879–80. This Court did not address whether the order was also void because the district court's jurisdiction had not been properly invoked.

The *El Paso County Courthouse* opinion next considered whether the trial courts' inherent judicial power, with its attendant aspects of self-preservation and separation of powers, authorized the order. While we emphasized that the separation of powers concept necessitates a doctrine of inherent judicial power to preserve the judicial function, we held that this power may not be exercised in such a fashion as to abrogate the correlative rights of the executive and legislative authorities of our government, for the public is equally protected by the preservation of all three functions. *Id.* at 881–82. Thus, we specifically held that these inherent powers *must be properly invoked* upon an adequate basis in a safeguarded process. *Id.* at 882. Because the order had been entered in the absence of procedural due process, we determined that it was void. *Id.* We set aside the void order and dismissed the appeal. *Id.*

It is clear that the Council of Judges and Respondent have endeavored to comply with *In re El Paso County Courthouse.* That decision, however, was limited to finding the order void due to the obvious denial of procedural due process. The issue of whether the district court's supervisory control had been properly invoked in the first place was not raised or addressed by that opinion. In this proceeding, the Commissioners Court has squarely raised the issue and we are not free to disregard the substantial body of

---

**6.** The order was not a final judgment nor was it an appealable interlocutory order. Because the opinion dismissed the appeal on other grounds, it did not address an argument pertaining to jurisdiction. *See In re El Paso County Courthouse,* 765 S.W.2d at 878. In retrospect, the opinion should have addressed the jurisdictional issue and dismissed the appeal for lack of jurisdiction. The order could have been challenged by a petition for writ of mandamus.

case law holding that the district court's jurisdiction must be invoked by the filing of a plenary suit. To suggest otherwise would place the Texas judiciary, an independent branch of government, on the perilous road to potentially second-guessing every executive or administrative decision of a county commissioners court. This we cannot do.

■ We therefore hold that a district court cannot invoke its own jurisdiction to exercise supervisory control over the commissioners court under Article V, Section 8 and Section 24.020. Because the district court's jurisdiction was not properly invoked, the March 9, 2005 order is not a valid exercise of the court's general supervisory control of the commissioners court.

### Inherent Authority

■ We next consider whether Respondent's order is authorized by an inherent power of the district court. In addition to the express grants of judicial power to each court, there are other powers which courts may exercise, though not expressly authorized or described by constitution or statute. *Eichelberger*, 582 S.W.2d at 398. These powers are generally categorized as "implied" and "inherent." *Id.* There is an important distinction between implied and inherent powers. *See id.*

■ The inherent judicial power of a court is not derived from legislative grant or specific constitutional provision, but from the very fact that the court has been created and charged by the constitution with certain duties and responsibilities. *Id.* The inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the ad-

ministration of justice, and in the preservation of its independence and integrity. *Id.* These powers exist to enable our courts to perform their judicial functions effectively. *Id.* at 399. Texas courts have recognized inherent powers in the following instances: to change, set aside or otherwise control their judgments; to summon and compel the attendance of witnesses; to regulate the admission and practice of law; and to provide personnel to aid the court in the exercise of its judicial function. *Id.* at n. 1 (and cases cited therein).

■ The judicial branch of government possesses inherent power to require the legislative and judicial branches[7] to provide staffing and facilities for it to properly perform its judicial functions. *District Judges of 188th Judicial District v. County Judge and Commissioners' Court for Gregg County, Texas,* 657 S.W.2d 908, 909 (Tex.App.-Texarkana 1983, writ ref'd n.r.e.); *see also Vondy v. Commissioners Court of Uvalde County,* 620 S.W.2d 104, 110 (Tex.1981) (holding that courts have inherent power to hire and require salaries be paid to secretaries, clerks, probation officers and assistants). Without this power, the judiciary, a separate and co-equal branch of government, could be rendered impotent by the neglect or caprice of the other branches. *188th Judicial District,* 657 S.W.2d at 909. The inherent power to require judicial staffing and adequate facilities is not unlimited. *Id.* The commissioners court has the initial and primary responsibility to determine, through the exercise of its broad discretion, when the necessities of a county require the building, repairing, remodeling and enlarging of a courthouse. *See Cosby,* 712 S.W.2d at 248; *McWilliams,* 153 S.W.

---

7. The commissioners court is part of the judicial branch but it exercises a legislative function when making fiscal and budgetary deci-

sions. *See Commissioners Court of Titus County,* 940 S.W.2d at 81; *Vondy,* 620 S.W.2d at 110; *Hooten,* 863 S.W.2d at 528.

at 372. This legislative function, when properly performed, is protected from the scrutiny of the judicial branch by the constitutionally-mandated separation of powers doctrine. *See* TEX. CONST. art. II, § 1. Further, sound public policy considerations demand that when the judiciary seeks to use its inherent power to overcome the legislative prerogative, it must be held to a high standard and must assume the burden of showing that the funds sought to be compelled are essential for the holding of court, the efficient administration of justice, or the performance of its constitutional and statutory duties. *Id.*

We now consider whether the March 9, 2005 order is justified by the district court's inherent authority to require the Commissioners Court to provide the court with adequate facilities. The March 9, 2005 order freezes more than $22 million in capital project funds and orders that the funds cannot be expended without approval of the district court. Further, the order effectively accuses the Commissioners Court of acting fraudulently, arbitrarily, and in bad faith with regard to the expenditure of the certifications of obligation funds. Thus, the order goes far beyond requiring the Commissioners Court to supply the district court with adequate facilities.[8] Further, the order indicates that Respondent intends to establish, through an evidentiary hearing, whether the Commissioners Court's failure to timely expend the funds allocated for courthouse expansion has caused financial harm to El Paso County taxpayers. The district court does not have inherent authority to prosecute this issue or make this determination on behalf of the taxpayers. Because the district court's jurisdiction under Article V, Section 8 and Section 24.020 to exercise supervisory control over the commissioners court was not properly invoked, and because the order is not a valid exercise of the district court's inherent authority, we conclude that the March 9, 2005 order is void.

### Adequate Remedy by Appeal

Respondent contends that mandamus relief is not available because the Commissioners Court has an adequate remedy by appeal. The March 9, 2005 order is not a final judgment nor is it an appealable interlocutory order. Appellate courts generally have jurisdiction over final judgments and such interlocutory orders as the legislature deems appealable. TEX.CIV.PRAC. & REM.CODE ANN. § 51.012 (Vernon 1997) and § 51.014 (Vernon Supp. 2004–05); *Ruiz v. Ruiz*, 946 S.W.2d 123, 124 (Tex.App.-El Paso 1997, no writ). Therefore, we conclude that mandamus relief is available because there is no adequate remedy by appeal. Issues One and Two of the petition are sustained. We direct Respondent to vacate the March 9, 2005 order and dismiss the attempted proceeding. The writ will issue only if Respondent fails to comply with this opinion.

---

8. The resolution passed by the Council of Judges on December 21, 2004 is an arguably valid exercise of the courts' inherent authority, insofar as it determines that the courts of El Paso County have need for additional courtroom space, but the courts do not have authority to dictate the location or design of the courthouse or the amount which must be expended.