COMMISSIONERS COURT OF CALD-
WELL COUNTY, Texas, Appellant,

v.

CRIMINAL DISTRICT ATTORNEY,
CALDWELL COUNTY,
Texas, Appellee.

No. 14253.

Court of Appeals of Texas,
Austin.

March 20, 1985.

Rehearing Denied April 17, 1985.

John W. Stayton, Jr., McGinnis, Lochridge & Kilgore, Austin, for appellant.

Honorable Jeffrey L. Van Horn, Crim. Dist. Atty., Lockhart, for appellee.

Before POWERS, KEITH * and GAMMAGE, JJ.

POWERS, Justice.

Caldwell County, the county judge and the four county commissioners appeal from a judgment of the trial court, obtained by the county's Criminal District Attorney in his suit against them for mandamus. The trial-court judgment directs that the county, its county judge and the commissioners, amend the county budget or adopt a county budget "in accordance with" the Criminal District Attorney's request for various appropriations for his office for the fiscal year 1983–1984. We will reverse the judgment of the trial court and order that the Criminal District Attorney take nothing by his suit for mandamus.

The Criminal District Attorney (hereinafter the "prosecuting attorney") submitted to the Commissioners Court of the county a proposed budget for his office for the fiscal year 1983–1984. Included therein were several sums for certain salaries,

benefits, supplies, and other expenses, the total being $74,286.00. The Commissioners Court adopted a budget for different amounts totaling $69,263.00. The prosecuting attorney then filed this suit to compel incorporation in the county budget of the sum of $74,286.00 fixed by him. The basis of his suit is his contention that the sums fixed by him are, by reason of Tex. Rev.Civ.Stat.Ann. art. 332a, § 5 (Supp. 1985), binding upon the Commissioners Court if reasonable and necessary, not subject to change by the Commissioners Court, and therefore the legally effective sums required to be included in the county budget for the operation of his office. Pointing to another statute, Tex.Rev.Civ.Stat.Ann. art. 689a–11 (Supp.1985), the Commissioners Court claims a power to fix the sums in question, changing if need be the amounts fixed by the prosecuting attorney, as in the ordinary process of county budget making.

## THE BUDGET–MAKING PROCESS UNDER ARTICLE 689a–11

The subject matter of the controversy is the budget-making procedure imposed by statute upon all Texas counties. One of the statutory powers given the Commissioners Court of Texas counties, exercisable in that court's constitutional power over county business, is the legislative power of budget-making. Tex. Const. Ann. art. V, § 18 (1955); art. 689a–11, *supra.* The basic nature of the budget-making process must be understood before one may intelligently infer *any* legislative intent from the two statutes in issue in the present controversy.

The basic procedure of governmental budget-making is relatively uniform. The process is typically initiated by the chief executive of the political body—in Texas by the Governor (Tex. Const. Ann. art. IV, § 9 (1984)), the County Judge (article 689a–11, *supra*), or the mayor or city manager (Tex. Rev.Civ.Stat.Ann. art. 689a–13 (Supp. 1985)), as the case may be. He prepares a

"budget," or estimates of necessary expenses and revenues for the ensuing fiscal year, which is nothing more than a *proposal* to the pertinent legislative body. The proposal is infused with *legal effect* only on enactment by the appropriate legislative body, fixing the revenue and appropriation measures necessary in its judgment. The various departments and officers of government then execute those measures within any restraints set in the budget document or by general law. An executive or legislative audit may follow.

The ideal objectives of the budget-making process include: (1) informed and well-considered legislative decisions about the scope and level of government functions, operations, and programs for the budget period; (2) maximum efficiency and economy in government; (3) optimum allocation of government revenues among the various functions, operations, programs, departments, officers, and agencies; (4) public presentation of information about government finances, functions, operations, and programs, through a public decision-making process, in order to encourage public understanding, support, and good-citizenship in reference to the resulting legislative decisions; and (5) providing a public forum in which to present and resolve any disputes about the conduct of government departments, officers, and agencies in their handling of the government funds entrusted to their responsibility by the terms of previous budgets. The process is *political.* It combines inextricably the two legislative powers of "taxation" and "appropriation," the latter being a distribution and setting aside of parts of the total available revenue among the various government functions, operations, and programs. From these general observations, we turn to the particulars of art. 689a–11, *supra,* the statute applicable to the present case.

Article 689a–11 provides for a public hearing on a proposed county budget, a document prepared by the County Judge of the county for the consideration of the Commissioners Court. It is provided that at such hearing any "taxpayer" may "participate," apparently by making whatever political, social, economic, or legal argument he may wish in aid of the legislative decisionmaking by the Commissioners Court. (The hearing is not, of course, an adjudicative hearing involving private rights and obligations). The statute then provides as follows:

> At the conclusion of the hearing, the budget as prepared by the County Judge shall be acted upon by the Commissioners' Court. The Court shall have authority to make such changes in the budget as in their judgment the *law warrants* and the *interest of the taxpayers demand.* When the budget has been finally *approved* by the Commissioners' Court, the budget, as *approved* by the Court shall be filed with the Clerk of the County Court, and taxes levied only in accordance therewith, and no expenditure of the funds of the county shall thereafter be made except in strict compliance with the budget as *adopted* by the Court.

(Emphasis supplied). Explicit in the foregoing provisions are the following propositions:

1. The word "budget" is used in two senses: first to refer to the proposal made by the County Judge, and second to the approved, or legally effective, budget which controls county revenue measures and expenditures after its adoption by the Commissioners Court and its filing with the Clerk of the County Court.

2. The Commissioners Court is vested with power to make changes in the County Judge's proposal according to the court's judgment; that is to say, according to the court's decisions on *whether* changes should be made in the proposal of the County Judge and *what* those changes shall be.

3. The power granted the Commissioners Court to change the County Judge's proposal is a power to make such changes "as in their *judgment* the law warrants [authorizes] and the interest of the taxpayers demand" (emphasis supplied). The correlation of total revenue and expenditure, and apportionment of the former among

the various county functions, operations, and programs, *in the overall public interest,* is the essence of the decisionmaking entrusted to the judgment of the Commissioners Court. There could be no clearer grant of discretionary power.

4. Legal effect is given the budget proposed by the County Judge, as changed by any action of the Commissioners Court, by the latter's *approval* of the proposal *as changed* and its filing with the Clerk of the County Court.

Thus, the Commissioners Court takes political decisions as to the level of taxation for the ensuing budget year as well as the scope and level at which the various county functions, operations, and programs shall be conducted, effectuating those decisions by the Court's legislative act. These decisions include preceding political and legislative decisions about such matters as the relative importance to the county of the various functions, operations, and programs, in the circumstances to be expected in the budget year and in comparison of one against the others as competitors for available county revenues, considering always the overall public interest, the interests of the taxpayers, and what the law requires. We arrive then at the issue of whether the Legislature intended, in art. 332a, § 5, to withdraw from the foregoing process the matter of what salaries shall be paid the employees of the prosecuting attorney (and presumably the amounts fixed by the prosecuting attorney as the travel expenses of his assistants and investigators, for the same statutory terms are used in reference to those amounts).

## THE STATUTORY PROVISIONS URGED BY THE PROSECUTING ATTORNEY

We are therefore required to assign meaning to art. 332a, § 5, *supra,* which provides as follows:

Salaries of assistant prosecuting attorneys, investigators, secretaries and other office personnel shall be *fixed* by the prosecuting attorney, *subject to the approval* of the commissioners court....

(Emphasis added). The section is one of nine in an enactment

relating to county attorneys, district attorneys and criminal district attorneys; authorizing and providing qualifications for assistants, investigators, secretaries and other office personnel; authorizing supplies, equipment, and other expenses for the office of prosecuting attorney; providing for repeal of conflicting laws; and declaring an emergency.

1973 Tex.Gen.Laws, ch. 127, at 275.

Among the other salient features of the statute, we find that the prosecuting attorney is empowered to "employ such assistant prosecuting attorneys, investigators, secretaries and other office personnel as, in his judgment, are required for the proper and efficient operation and administration of the office" (§ 2); and further empowered to fix the maximum allowable travel expenses of the assistant prosecutors and investigators of his office, as "approved by the commissioners court...." (§ 6). Section 7 of the statute provides that the Commissioners Court is "authorized to furnish" various facilities and equipment as "necessary to carry out the official duties of the prosecuting attorney's office...." Section 8 authorizes the Commissioners Court "to accept gifts and grants from any foundation or association for the purpose of financing adequate and effective prosecution programs within the county...."

From these statutory provisions we are asked to draw the inference that by enactment of art. 332a the Legislature intended to withdraw from the counties' budget-making process, and the attendant vicissitudes of political controversy, the amounts necessary to pay the salaries of the prosecuting attorney's employees, which amounts should instead be "fixed" by the prosecuting attorney, to be changed by the Commissioners Court only to the extent the amounts "fixed" by him are unreasonable or unnecessary. We cannot agree to the inference.

## THE APPLICABLE RULES OF STATUTORY CONSTRUCTION

The issue is, of course, one of statutory construction. Specifically, we must assign

meaning to art. 332a, § 5 in light of the more general provisions of Tex.Rev.Civ. Stat.Ann. art. 689a–11, *supra*, which regulate the budget-making process in Texas counties. We shall set out the controlling rules of statutory construction as we see them. They are familiar.

■ 1. *The "Cardinal Rule."* We are required to seek out the legislative intent from a general view of the whole enactment in question, and once that intent has been ascertained, it follows as a matter of course that we shall construe the questioned part of the statute so as to give effect to the purpose of the Legislature. *Citizens Bank of Bryan v. First State Bank,* 580 S.W.2d 344, 348 (Tex.1979). Courts are not responsible, however, for omissions in legislation, but only for giving a true and fair interpretation of the enactment as it is written, which means an interpretation that is not exaggerated, forced, or strained but one the ordinary meaning of the words of the enactment will fairly sanction and clearly sustain. *Railroad Commission of Texas v. Miller,* 434 S.W.2d 670, 672 (Tex.1968).

■ 2. *Implications from the Words Used in the Statute.* The words used in the enactment shall be interpreted in their ordinary sense. Implications therefrom are *forbidden* when the legislative intent can be gathered from a reasonable interpretation of the statute *as it is written.* Implications are *permitted only* when the intent of the Legislature is *obvious.* They are *never* permitted to contradict or add to a statute. *Commonwealth of Massachusetts v. United N. & S.D. Co.,* 140 Tex. 417, 168 S.W.2d 226, 229 (1942).

■ 3. *Adjustment of Conflicts in Statutory Provisions.* Courts may not *create by implication* a repugnance in statutory provisions—any repugnance must be *positive* as well as *clear* from the terms of the statute itself. Indeed, where there *is* a positive and clear repugnance between two statutes, courts are enjoined to *harmonize* and give effect to *both* enactments if at all possible by assigning to each a meaning that will *permit both* to stand in harmony. *Duval Corporation v. Sadler,* 407 S.W.2d 493 (Tex.1966); *Standard v. Sadler,* 130 Tex. 313, 383 S.W.2d 391 (1964); *State v. Standard Oil Co.,* 130 Tex. 313, 107 S.W.2d 550 (1937).

■ 4. *Construction in Reference to Subject Matter of Statute.* It is proper to consider the history of the subject matter of the statute in arriving at the purpose and intent of the enactment. *Calvert v. Fort Worth National Bank,* 163 Tex. 405, 356 S.W.2d 918, 921 (1962).

### HOLDINGS AND DISCUSSION

■ The salaries in question are, under art. 332a, § 5, to be *"fixed"* by the prosecuting attorney, *"subject to the approval of the commissioners court"* (emphasis added). From the emphasized words it is argued that such salaries shall be set by the prosecuting attorney, so as to be *legally binding* upon the Commissioners Court and the county generally, subject only to being set aside by such Court to the extent they are "unreasonable" or "unnecessary." May it reasonably be gathered from the terms of the statute that such was the intent of the Legislature? We think not.

So far as we are able to determine, the argument consists solely in the following rationale: (1) one dictionary meaning of the word "fixed" is "not subject to change"; (2) the Legislature intended this to be the meaning of the word as used in art. 332a, § 5; (3) but because the word "fixed" is followed immediately by the qualifying phrase "subject to the approval of the commissioners court," some accommodative meaning must also be assigned that phrase; (4) therefore, it means that the sums "fixed" by the prosecuting attorney may be changed by the Commissioners Court only when those sums are "unreasonable" or "unnecessary."

On examining the rationale, it is readily apparent that the leap from (1) to (2) is by an *a priori* assumption not justified by reference to statutory context, to legislative history, to practicalities of administration, or to any principle of logic. We are

simply pointed to another statute (Tex.Code Cr.P.Ann. art. 42.12, § 10 which, before it was amended, 1977 Tex.Gen.Laws, ch. 343, § 2, at 914, empowered district judges to fix the salaries of probation officers with the advice and consent of the Commissioners Court) and informed that a similar meaning was intended in art. 332a. Similarly, the leap from (3) to (4) is an *a priori* assumption not so justified. Indeed, art. 332a does not contain at all the words "reasonable" or "unreasonable," nor the word "unnecessary," and uses the word "necessary" solely in reference to the travel and equipment requirements of the prosecuting attorney.

Quite obviously, however, the word "fixed" and the phrase referring to the "approval" of the Commissioners Court qualify *each other* and we must strive to assign each a meaning that will permit both to have legal effect in context. Article 332a, § 5, in the phrase "subject to the approval of the commissioners court," expressly contemplates within itself *some* power in the Commissioners Court to act in *some* manner and in *some* circumstances upon the decisions of the prosecuting attorney in reference to the salaries in question. Moreover, art. 332a, § 5 must also be construed in a manner consistent with another statute, art. 689a–11, and the broad legislative power given therein to the Commissioners Court. We believe these problems of statutory construction may be resolved quite easily under the applicable and traditional rules of statutory construction pointed out above.

To some extent, art. 332a and art. 689a–11 are *in pari materia*, for both concern matters fairly coming within the terms of each. The prosecuting attorney suggests that the word "fixed" was used in art. 332a to evidence a legislative intent that the salaries established by the prosecuting attorney shall not be subject to change. This *creates*, of course, a conflict with the provisions of art. 689a–11, establishing the county budget-making process, as well as some measure of conflict within art. 332a itself, where it is provided that the salaries "fixed" by the prosecuting attorney shall

be "subject to the approval of the commissioners court." To resolve the conflicts so needlessly created, the prosecuting attorney then assumes *a priori* another legislative intent: the prosecuting attorney shall legislatively establish the salary amounts and the Commissioners Court, by another legislative act, shall arrange for the revenue to pay such salaries, to the extent they are reasonable and necessary. But, in our view, it may not fairly be said from the terms of art. 332a and art. 689a–11 that the Legislature *obviously* intended the meanings suggested by the prosecuting attorney.

The prosecuting attorney would apparently agree that such was not the *obvious* legislative intent, as indicated by the concentration in his brief upon word meanings and his analogies to judicial decisions construing Tex.Code Cr.P.Ann. art. 42.12, *supra*. Such would hardly be necessary if the intent of the Legislature was *obvious* in the case of art. 332a. But it is in precisely this kind of case that courts are *prohibited* from making such inferences. Statutes may not be extended by implication *except* that the legislative intent be *obvious*. *Commonwealth of Massachusetts v. United N.S.D. Co., supra.*

Not only would it be erroneous to make any implications to add to art. 332a, but the implications suggested by the prosecuting attorney are in our view erroneous and certain to assure a troubled and unworkable state of affairs in county government. These implications would repeal, to the extent of setting the salaries in question, the general power given the Commissioners Court in art. 689a–11, even though it is a statute *subsequent* in time. The implications are indulged even though there exists no clear and positive repugnance between arts. 332a and 689a–11, and even though the repugnance assumed by the prosecuting attorney may easily be harmonized by a reasonable interpretation that is fairly sanctioned and sustained by the words of each statute and permits both to stand unimpaired. This being possible, we are required to assign such other meaning to

the statutes. *Duval Corporation v. Sadler, supra; Standard v. Sadler, supra; State v. Standard Oil Co., supra.*

The logic of our reasoning in this regard requires, of course, that there *exist* another meaning possible to be assigned art. 332a, § 5 which is: (1) reasonably and fairly sanctioned by the words used therein; (2) not repugnant to any other statutory provision *in pari materia;* and (3) therefore the meaning presumably intended by the Legislature to be inferred from the words in art. 332a, § 5.

We would suggest that one such meaning is this: The prosecuting attorney's power to "fix" the salaries of his employees refers not to the "budget" *finally approved* by the Commissioners Court and made legally effective on filing with the Clerk of the County Court. Instead, the power given the prosecuting attorney to "fix" such salaries means that he, and not the County Judge, shall specify such salaries for inclusion in the "budget" prepared by the County Judge for submission to the Commissioners Court as a *proposed* "budget," which, when "approved" by the legislative act of that body, can become legally effective. The word "approval" is then given a consistent meaning in both statutes; any repugnance between the term "fixed" and the general powers of the Commissioners Court is avoided; and both statutes are permitted to stand in harmony with a legal effect consistent with their express provisions. No implications at all are indulged to *create a repugnance* and a partial repeal by implication. But there are more fundamental reasons which dictate this possible meaning rather than the meaning selected by the prosecuting attorney.

The meaning selected by him, and assigned to art. 332a, § 5, not only violates the rules of construction referred to above, it also produces a consequence that is quite extraordinary and prejudicial to the public interest, as that interest is manifested and required to be considered in the budget-making process prescribed by art. 689a–11. Under the prosecuting attorney's interpre-

tation, his unilateral determination of his employees' salaries is not realistically subject to the public debate, the political-adjustment process, the public-interest evaluation, the taxpayer-interest consideration, and the mandatory correlation of county revenue and expenditure estimates which comprise the legislative process contemplated by art. 689a–11. Of what use are public hearings, public debate, and so forth if the amounts "fixed" by the prosecuting attorney are not open to change by the only body authorized to raise the revenue to pay them and make the other legislative determinations referred to above? If they are not open to change, there is no practical reason for them to be discussed or subjected to the political and legislative process. They are outside such process and the result of dictation by a single officer of the executive branch—an anomaly in any governmental budget-making process.

The anomaly cannot be cured by suggesting that the Commissioners Court may change the amounts "fixed" by the prosecuting attorney when those amounts are "unreasonable" or "unnecessary." It is obvious that the prosecuting attorney would not intentionally "fix" salaries that are "unreasonable" and "unnecessary." Any controversy would be about *whether* they are so. How would the controversy be resolved and who would make such resolution? One may only assume that it would be done by the judicial branch. This unreasonable (and perhaps unconstitutional) involvement of still another branch of government in the legislative process, especially in a contest about an essentially legislative function of determining "reasonableness" and "necessity" in complex circumstances, is in our view too erroneous to require discussion. In any event, no statute to which we have been referred purports to vest the judicial branch with that power or sets out what standards or factors a reviewing court should consider in making its decision about such legislative matters.

And if such a controversy is not to be resolved by the judicial branch, who shall

do it? How may the Commissioners Court arrive at a "finally approved" annual budget pending trial-court and appellate review of the controversy? How will the County function in the interim? How may taxes be assessed and collected? We would not impute to the Legislature consequences that are so unreasonable, futile, inconvenient, disturbing to county government, and so prejudicial to the public interest generally. *National Surety Corporation v. Ladd,* 131 Tex. 295, 115 S.W.2d 600 (1938).

Finally, we observe that the Legislature's use of obscure and inexact language, from which a reviewing court must divine its intent, severely hinders the ascertainment of what that intent really was. It is for this reason that a reviewing court is forbidden to speculate about such intent when it is not *obvious,* as by making implications about what the Legislature *might* have intended. In our view, art. 332a, § 5 is a case in point. But in cases such as the present, the rule against implications should be applied quite literally and strictly. It is not too much for a court to require that the Legislature positively and unequivocally express its intent if the necessary consequences are to be so inimical to the public interest and contrary to the normal political-legislative process.[1]

Accordingly, we hold that the Legislature intended by the two statutes in question that the ordinary budget-making process of art. 689a–11 be followed in reference to the salaries of the prosecuting attorney's employees, except that he, and not the County Judge, shall specify the amounts to be included in the proposed budget submitted to the Commissioners Court, that Court having the power to change those salaries, as in the case of ordinary county employees, before approving and filing the budget with the Clerk of the County Court. We therefore reverse the judgment of the trial court and order that the prosecuting attorney take nothing by his suit.

**1.** *Cf. Commissioners Court of Lubbock County v. Martin,* 471 S.W.2d 100, 106–07 (Tex.Civ.App. 1971, writ ref'd n.r.e.) where the Legislature expressly and clearly declared in the first section of the statute in question that its purpose was "to place wholly within the State courts ... the responsibility" for the adult probation program.