Opinion issued December 22, 2015

In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-15-00583-CV

_____

**THE HONORABLE MARK HENRY, COUNTY JUDGE
OF GALVESTON COUNTY, Appellant
V.**

**THE HONORABLE LONNIE COX, JUDGE OF THE 56TH DISTRICT
COURT OF GALVESTON COUNTY, Appellee**

---

**On Appeal from the 56th District Court
Galveston County, Texas
Trial Court Case No. 15CV0583**

---

### CONCURRING AND DISSENTING OPINION

I concur with the Court's judgment on issues one, two, and four raised in County Judge Mark Henry's appeal. I disagree with its disposition of the third issue and therefore its affirmance of that portion of the district court's temporary injunction order that required County Judge Henry to order the County Treasurer to pay Bonnie Quiroga the same salary as she received in her old position—a position that no longer exists. I believe the district court erred in setting a specific salary;

1

instead, it should have instructed the commissioners court to set a new—and reasonable—salary for Quiroga's new positon. Not only did the district court's injunction improperly invade the province of the commissioners court to determine compensation for its employees, but it also erroneously ordered a single commissioner to take action that only the commissioners court as a whole could take.

## Background

This unfortunate dispute between two branches of the Galveston County government originates out of a series of events that began twenty years ago. The events were uncontroversial at the time but unwittingly provided a toehold for the current controversy. In 1995, the Galveston County commissioners, at the suggestion of the county's trial judges, created a position, "Director of Court Administration," to aid the judges in docket management. But the position was not restricted to assisting the trial judges; it also provided services to the County Judge, who is a member of the commissioners court.[1] The new position formally reported to the County Judge. But because the position was originally created at the request of, and primarily for, the trial judges, it also informally reported to the Galveston County Administrative Judge. Five years after the position was created and at the

---

[1]     The judicial administration position was not created under the procedure set forth in Section 151.001 of the Local Government Code. TEX. LOC. GOV'T CODE ANN. § 151.001 (West 2008).

2

"recommendation" of the trial judges, the commissioners court agreed to hire Bonnie Quiroga as the Director of Judicial Administration.[2]

Eventually the two groups for whom Quiroga worked disagreed about the quality of her performance. In June 2014, the commissioners, who had been dissatisfied with her work, fired her.[3] The trial judges strongly disagreed with the decision and took a number of steps to retain Quiroga. The Office of Court Administration (OCA) proposed a compromise to split the duties between those reporting to the trial judges and those reporting to the County Judge. After a series of discussions between the trial judges and the county commissioners, in May 2015, the trial judges suggested the adoption of OCA's compromise, which was pursuant to section 74.103 of the Government Code. TEX. GOV'T CODE ANN. § 74.103 (West 2013) ("The courts may appoint appropriate staff and support personnel according to the needs in each county.").

The trial judges' offer of compromise requested that the commissioners create a new position for an employee whose sole responsibility would be to assist with court administration and who would have a slight change in title, Director of *Court*

---

[2] The "Director of Judicial Administration" is the same position as the "Director of Court Administration." During the past 20 years, the position's title has changed.

[3] To be precise, County Judge Henry initially fired her. He testified that he knew at the time that a number of the commissioners were also dissatisfied with her performance. The commissioners court shortly thereafter ratified that decision.

Administration (which was the original title of Quiroga's position). In effect, the trial judges were requesting that the former department known as Justice Administration, which used to fall partly under the judiciary and partly under the County Judge and commissioners court, be split and a new position be created that reported solely to the judiciary.

The trial judges set out the proposed job's "essential duties" in 30 bullet points, none of which corresponded to the duties previously performed for County Judge Henry under the earlier arrangement. In addition to having fewer duties, this new position would also supervise fewer employees. All agreed that the trial judges would be responsible for hiring and supervising this new position.

While the position was new, the trial judges' candidate for the position was known to all of the public officials involved in the controversy: Bonnie Quiroga, the person who had served as Director of Judicial Administration for thirteen years and whose performance had been the subject of the earlier disagreement.

A few weeks after the trial judges submitted their request, on June 9, 2015, the commissioners court issued an order with findings of fact. The order acknowledged that the trial judges need staff to assist them with certain tasks such as:

> coordinating requests for visiting judges for the courts from the regional administrative judge, arranging substitute court coordinators and reporters, supervising case flow management of the courts, preparing administrative judicial orders and documents, assisting with the

4

preparation of daily jail docket, assisting with the processing of attorney fee vouchers, [and] maintaining a database of eligible court appointed attorneys.

The commissioners court order approved the appointment of the new position, with the duties covered by the trial judges' proposed job description but with a new title of "Court Manager."[4] The commissioners court approved a salary grade of 22[5] (with 30 being the highest grade a county position could be classified) with a salary step ranging from A to E (with salary steps in the county ranging from A to Z within the grades).[6] Based on the range specified, the new position could pay between $57,705 and $63,695 annually. If the salary step had been assigned a higher range, the position could have paid more.

The County offered little explanation of why the salary step for the new position was limited to an "E." County Judge Henry explained that the County has a policy of assigning positions at grade 20 and above at an initial salary step not to exceed E. He testified, "A new hire is A through E" while a higher step is reserved

---

[4] For simplicity, I hereinafter refer to this position as the Court Manager position and to the former position, the Director of Judicial Administration, as the Court Director.

[5] For grade 22, the salary range is $57,000 through "the 80,000s" with a step range from A to R.

[6] According to the June 9 order by commissioners court, salary grade in Galveston County "correlates to the market range of salaries for a particular position. Salary step . . . correlates to pay differentials within the market range affected by such factors as experience, education, or training of the employee."

"for more tenured people. . . . [T]he county policy says you can hire in new [personnel] between 22A and E." The County assigned Quiroga "the maximum 22E." The County applied this policy knowing that Quiroga was not a new County hire—she had worked there for over 30 years—and had spent over 13 performing all of the functions of the new position plus more.

Shortly after issuing its order, the commissioners court met in two separate executive sessions to further discuss the trial judges' request. Following the first executive session, the commissioners approved the creation of new administrative positions to report to the Court Manager. Following the second executive session, the commissioners approved a budget amendment for the employees' pay.

But one dispute remained: the salary for the new Court Manager position. The trial judges requested a salary of $85,000 to $120,000 based on an informal survey they conducted from six other counties in Texas where salaries ranged from $49,720 to $149,448. The trial judges' survey did not include internal comparisons with salaries paid to other Galveston County employees. Nor did the trial judges' survey compare the responsibilities and necessary qualifications of the Court Manager position with the responsibilities and necessary qualifications of other Galveston County positions.

According to testimony from District Judge Lonnie Cox, County Judge Henry stated that he would never pay a salary in the range suggested by the trial judges for

this new position. Henry then ordered a salary survey to be performed by a county employee. This study, which also compared the proposed position's salary to salaries for positions in other counties, did not look at census data to compare per capita income in the counties.[7]

Neither side hired a salary consultant or specialist or person with experience in setting the salary for comparable positions to resolve this dispute.

With no reliable method suggested by either side to resolve this salary dispute, District Judge Cox[8] sued County Judge Henry,[9] seeking injunctive relief. The district court agreed with the trial judges on the salary dispute. It granted a temporary injunction, reemploying Quiroga in the new Court Manager position with the same salary as she had been paid in her former position, $113,000 annually.

**The district court's unchallenged findings**

---

[7] One of the counties used for comparative purposes had not yet filled a recently-created, similar position.

[8] Judge Cox sued "in his official capacity as judge of the 56th District Court of Galveston County, Texas." He did not sue as the administrative law judge. County Judge Henry does not raise any issue regarding Cox's standing to bring this suit. *See generally Cty. Comm'rs Court of Dallas Cty. v. Williams*, 638 S.W.2d 218, 219 (Tex. App.—Eastland 1982), *writ ref'd n.r.e. sub nom. Williams v. Comm'rs Court of Dallas Cty.*, 655 S.W.2d 206 (Tex. 1983) (holding practicing attorney had standing to bring challenge against commissioners court for arbitrarily allocating courtroom space).

[9] The petition does not state that Henry is sued only in his official capacity.

In its third issue, the County[10] argues that the district court did not validly exercise its general supervisory jurisdiction over the county commissioners court under Article V, section 8 of the Texas Constitution. TEX. CONST. art. V, § 8 (granting district courts "appellate jurisdiction and general supervisory control over the County Commissioners Court"). A district court exercising its limited supervisory authority may determine that a commissioners court has acted arbitrarily. *Griffin v. Birkman*, 266 S.W.3d 189, 195 (Tex. App.—Austin 2008, pet. denied). The district court found that the County did act arbitrarily.

In its fact findings, the district court stated that the County used a salary survey process that "was arbitrary and designed to orchestrate the salary of the replacement administrator for the courts at the lowest possible level . . . ." It further found that Henry "used the ability to set the salary for the new position at a sufficiently low salary to continue to control the hiring process." The district court also found that County Judge Henry knew that the trial judges considered the salary level set by the commissioners court to be "arbitrarily low." Notably, the County does not contend that the district court abused its discretion because of a lack of evidence to support

---

[10]     Because County Judge Henry and the majority of the commissioners court are aligned, I refer to Henry as the County when referring to his arguments.

these findings.[11] Instead, it argues that the district court abused its discretion by "telling the commissioners court what salary to adopt." I turn to that issue next.

**The district court's order that Quiroga be paid the same "salary scale"
as she was paid in her former position**

### 1. Legal error

While this Court's opinion correctly observes the importance of the judiciary's inherent authority to ensure that the judicial branch receives essential staffing and facilities, I believe the district court had neither the statutory authority nor the inherent constitutional authority to set the Court Manager's salary.

### a. Supervisory authority

I agree with the Court that the district court's supervisory authority permitted it to find that the commissioners court acted arbitrarily in setting Quiroga's salary.

---

[11] An appellate court's role in an appeal from a temporary injunction, which will only be in effect until the trial and final judgment, is limited because a district court has broad discretion in denying or granting a temporary injunction and we do not review the merits of the underlying case. *Conlin v. Haun*, 419 S.W.3d 682, 686 (Tex. App.—Houston [1st Dist.] 2013, no pet.). The issue on appeal is not whether we agree with the district court's finding. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985) (stating in review of whether trial court abused its discretion in striking the defendant's answer, "[t]he mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred."); *De Mino v. Sheridan*, 176 S.W.3d 359, 373 (Tex. App.— Houston [1st Dist.] 2004, no pet.) (quoting *Downer* in affirming temporary injunction).

But I disagree that the district court's supervisory authority permits it to set Quiroga's salary.[12]

The Texas Constitution grants a district court "appellate jurisdiction and general supervisory control over the County Commissioners Court." TEX. CONST. art. 5, § 8. A relatively new section in the Government Code provides that commissioners courts "set" a "salary range" for a court administrator.[13] Under that statute, the court administrator is "entitled to reasonable compensation, as determined by the judges served and in the salary range for the position, as set by the commissioners court." TEX. GOV'T CODE ANN. § 75.401(d) (West Supp. 2015).

The commissioners court's approval of budget is a legislative function. *Comm'rs Court of Caldwell Cty. v. Criminal Dist. Attorney, Caldwell Cty.*, 690 S.W.2d 932, 936–38 (Tex. App.—Austin 1985, writ ref'd n.r.e.). Setting the "salary range" for a court administrator is a "discretionary duty" of the commissioners court: "the fiscal policy of the county is the discretionary responsibility of the

---

[12]    The Texas Supreme Court's analysis of statutory supervisory authority provides a useful paradigm for approaching the limits of a court's inherent authority, which I discuss in further detail in the following section.

[13]    This section was approved by the Legislature and signed by the Governor before the hearing on the temporary injunction but was not effective until September 1, 2015. Both parties have argued the case based on the premise that the law applies to this dispute because the commissioners meeting on June 9 was "in anticipation of" the effective date of the statute. The June 9 commissioners court order specially refers to this bill and is effective as of September 1. Henry also testified that the County's order setting the position and salary would be effective on September 1, 2015.

10

Commissioners Court." *Hooten v. Enriquez*, 863 S.W.2d 522, 532 (Tex. App.—El Paso 1993, no writ); *see Comte v. Smith Cty. Comm'rs' Court*, No. 06-14-00086-CV, 2015 WL 6521198, at *5 (Tex. App.—Texarkana Oct. 28, 2015, no pet. h.) (mem. op.) (setting court appointed attorney's salaries was discretionary duty of commissioners court).

"While a district court may enjoin an act of the commissioners court that is beyond [its] authority or otherwise performed arbitrarily, capriciously, collusively, fraudulently, or in abuse of its discretion, the district court has no authority to direct a public official in how to perform a discretionary act." *Hooten*, 863 S.W.2d at 532; *Weber v. City of Sachse*, 591 S.W.2d 563, 566 (Tex. Civ. App.—Dallas 1979, writ dism'd); *cf. Mauzy v. Legislative Redistricting Bd.*, 471 S.W.2d 570, 573, 575 (Tex. 1971) (holding that enactment of invalid statute attempting apportionment of state into representative districts did not "rob[] the Board of jurisdiction to apportion the state into such districts" and stating "mandamus never lies to control official discretion of a state board"). A district court may not order the commissioners court to pay a certain salary "or direct a particular county commissioner to cast his or her vote in a particular manner. . . . [T]he district court was only empowered to adjudge" the salary "as being improper and thus void." *Hooten*, 863 S.W.2d at 533. A district court's supervisory authority is limited and "is not used to substitute the discretion of the district court for that of the public official." *Vondy v. Comm'rs Court of*

11

*Uvalde Cty.*, 620 S.W.2d 104, 109 (Tex. 1981); *see also Hooten*, 863 S.W.2d at 532–33 (judiciary cannot "substitute[] its own judgment for that of the Commissioners Court"). When a district court reviews a government official's statutory discretionary duty, it may find that the official acted arbitrarily, but it must not read the official's discretion out of the statute.

The limits of a district court's supervisory authority have been repeatedly recognized by Texas courts. In *Ector County v. Stringer*, a constable brought suit contending that the commissioners court was not paying him a reasonable salary. 843 S.W.2d 477 (Tex. 1992). The trial court determined a salary that it deemed to be reasonable. *Id.* at 478. The Texas Supreme Court held that the district court did not have jurisdiction to make this salary determination. *Id.* at 479. While the district court had general supervisory control over the county commissioners court, that authority could only be invoked when the commissioners court "acts beyond its jurisdiction or clearly abuses the discretion conferred on it by law." *Id.* (quoting *Tarrant Cnty. v. Shannon*, 104 S.W.2d 4, 9 (Tex. 1937)). When the commissioners court abuses its discretion, "the district court may order the commissioners court to . . . set a reasonable salary," but it "cannot substitute its discretion for that of the commissioners by making that determination itself." *Id.* A district court's role in reviewing the commissioners court's fiscal decisions "is necessarily a limited one." *Id.*

12

> [A] court has no right to substitute its judgment and discretion for the judgment and discretion of the governing body upon whom the law visits the primary power and duty to act. Of course, if such governing body acts illegally, unreasonably, or arbitrarily, a court of competent jurisdiction may so adjudge, but there the power of the court ends.

*Id.* (quoting *Lewis v. City of Fort Worth*, 89 S.W.2d 975, 978 (Tex. 1936)). The Court concluded that while "the district court may order the commissioners court to exercise its discretion," it "cannot tell the commissioners what decision to make." *Stringer*, 843 S.W.2d at 479.

Similarly, in another case, the appellate court held that the trial court did not err in refusing to dictate to the commissioners court an amount "as to what is a reasonable salary" and instead ordering the commissioners court to set a reasonable salary, after finding that the commissioners court had set an unreasonable salary for a justice of the peace. *White v. Comm'rs Court of Kimble Cty.*, 705 S.W.2d 322, 326 (Tex. App.—San Antonio 1986, no writ); *see also Cty. of Dallas v. Blankenship*, No. 05-98-01630-CV, 2001 WL 1184062, at *2 (Tex. App.—Dallas Oct. 9, 2001, pet. denied) (mem. op., not designated for publication) (citing *Stringer* for proposition that trial court may review commissioners court salary decision to determine whether it is arbitrary "but may not substitute its discretion for that of the commissioners[] court").

Nor can a county executive official set an employee's salary when that discretion is granted to the commissioners court. *Caldwell Cty.*, 690 S.W.2d at 935.

13

*Caldwell County* involved a statute that provided that salaries in the prosecutor's office are "*fixed*" by the prosecuting attorney, "*subject to the approval* of the commissioners court." *Id.* (quoting 1973 Tex. Gen. Laws, ch. 127, at 275). The Austin court held that the prosecutor could propose a budget for these salaries but that the commissioners court retained discretion to set the budget and salaries.

*Caldwell County* explained the policy rationale behind the rule that only the Legislature can set a position's salary. A contrary result would "assure a troubled and unworkable state of affairs in county government." *Id.* at 937. It would also undermine "the public debate, the political-adjustment process, the public-interest evaluation, the taxpayer-interest consideration, and the mandatory correlation of county revenue and expenditure estimates which comprise the legislative process." *Id.* at 938. The court explained:

> Of what use are public hearings, public debate, and so forth if the amounts "fixed" by the prosecuting attorney are not open to change by the only body authorized to raise the revenue to pay them and make the other legislative determinations referred to above? If they are not open to change, there is no practical reason for them to be discussed or subjected to the political and legislative process. They are outside such process and the result of dictation by a single officer of the executive branch, an anomaly in any governmental budget-making process.

*Id.* at 938. The court also observed that a dispute between the prosecutor's office and the county commissioners would be difficult to resolve by permitting district courts to decide the reasonableness of the requested salary because that would involve the judiciary in an essentially legislative function of determining "'reasonableness' . . .

14

in complex circumstances." *Id*. If the commissioners court retained this discretionary authority under the statute in *Caldwell County*, it surely must exist under the newly-enacted statute which expressly requires that the salary range be set by the commissioners court. TEX. GOV'T CODE ANN. § 75.401 (West Supp. 2015).[14]

### b. Inherent authority

The Court states that the district court's temporary injunction was proper because its inherent power "alone" grants it authority to do so. The temporary injunction order, however, does not rely on the judiciary's inherent authority.[15] In any event, in my opinion, the judiciary's inherent authority does not provide authority under these facts for the district court to set Quiroga's salary.

Courts have "inherent power to act to protect and preserve the proper administration of the judicial system. . . . The judicial system of this state cannot function properly if those officials who are responsible for carrying out certain duties in that process are not properly compensated." *Vondy*, 620 S.W.2d at 109–10. Thus,

---

[14]    It is different when the Legislature expressly grants the judiciary authority to set the salary for certain employees. *See Mays v. Fifth Court of Appeals*, 755 S.W.2d 78, 79 (Tex. 1988). Although the new statute allows the judges for whom the court administrator works to set the administrator's salary within the range approved by the commissioners court, the judges are not allowed to set that salary range.

[15]    An amended petition filed after the close of the evidence at the temporary injunction contends, for the first time, that injunctive relief is needed "to avoid interference with distinctly judicial functions under the Separation of Powers" and that County Judge Henry violated "the independence of" the court and the "inherent powers" of the judiciary. The clerk's record does not contain any order granting a trial amendment.

courts have "inherent power to hire and require salaries be paid for" certain judicial employees performing tasks of judicial administration. *Id*. at 110.

But this inherent authority is not unlimited. *Dist. Judges of 188th Judicial Dist. v. Cty. Judge*, 657 S.W.2d 908, 909 (Tex. App.—Texarkana 1983, writ ref'd n.r.e.). For example, inherent authority does not allow judges to set their own salaries. The Texas Constitution provides that "the Legislature shall provide for the . . . compensation of Justices and Judges of the Appellate Courts and District and Criminal District Courts"—not the judicial branch. TEX. CONST. art. V, §1-a(1).

The Texas Supreme Court in *Vondy* stated that, while the judiciary has the inherent power to require the commissioners court to adequately compensate certain court-appointed positions that the judiciary views as necessary for the proper administration of justice, the determination of the amount that constitutes a "reasonable salary" is a matter of "determination for the commissioners court." 620 S.W.2d at 108–09. Determining what is a reasonable salary in light of budgetary considerations falls within the legislative function performed by the commissioners court. *See Harris Cty. v. Nagel*, 349 S.W.3d 769, 794 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("Under Texas law, the principal organ of county government is the commissioners court. Its powers and duties include aspects of legislative, executive, administrative, and judicial functions. In creating the county, the commissioners court performs a legislative function. The allocation of county

16

funds is a policymaking determination." (internal citations and quotation marks omitted)). The *Vondy* Court concluded that the district court should have compelled the commissioners court to set a reasonable salary for the office in question. 620 S.W.2d at 104–05, 109; *see also Comm'rs Court of Titus Cty. v. Agan*, 940 S.W.2d 77, 80 (Tex. 1997) ("[I]n reviewing a Commissioners Court judgment for abuse of discretion, the district court has no right to substitute its judgment and discretion for that of the Commissioners Court. The district court may order the Commissioners Court to exercise its discretion, but cannot tell the Commissioners what decision to make" (internal citations omitted)).

*In re El Paso County Commissioners Court* dealt with a dispute between the El Paso County commissioners court and the El Paso County judges over a courthouse expansion project. 281 S.W.3d 16, 18–22 (Tex. App.—El Paso 2005, no pet.). Relying on the judiciary's inherent power to require the legislative branch to provide facilities for the judiciary, the district court froze $22 million previously allocated for the project until the dispute could be resolved. *Id.* at 21. The El Paso court stated that "sound public policy considerations demand that when the judiciary seeks to use its inherent power to overcome the legislative prerogative, it must be held to a high standard and must assume the burden of showing that the funds sought to be compelled are essential" to its judicial functions. *Id.* at 28. Thus, while a district court's inherent authority "arguably" would permit it to order additional courtroom

space, it would not allow the judiciary to dictate "the amount which must be expended" on the facilities. *Id.* at 28 n.8.

Under *Vondy* and *El Paso County Commissioners Court*, the district court's inherent authority does not reach so far as to allow a district court to bypass the commissioners court and set Quiroga's salary itself.

The Court instead relies heavily on Justice Spears's concurring opinion in *Mays*. Justice Spears stated that "a court has the inherent power to compel the expenditure of those public funds which are reasonably necessary for the court to efficiently fulfill its constitutional function." *Mays*, 755 S.W.2d at 80.

The weight to be given to the "reasonably necessary" standard articulated in the *Mays* concurrence is questionable for three reasons. First, Justice Spears's concurring opinion, although it was joined in by four other members of the Court, was dicta because all nine members of the Court agreed on the result on statutory grounds. Noting that "the inherent powers doctrine has not been used in Texas to compel funding of specific salary amounts," a Texas Attorney General Letter Opinion has since refused to follow the concurring opinion in *Mays* because "it was dicta" and, therefore, "cannot control our decision"; it instead followed the reasoning of *District Judges of 188th Judicial District* as I do. Tex. Att'y Gen. Op. LO-92-44 (1992). Second, it is unclear whether the "reasonably necessary" standard in the concurrence is the same as an "essential" or "necessary" standard. *See* Ted Z.

Robertson & Christa Brown, *The Judiciary's Inherent Power to Compel Funding: A Tale of Heating Stoves and Air Conditioners*, 20 ST. MARY'S L.J. 863, 879 (1989) ("As a practical matter, whether there is any real difference between what is 'reasonably necessary' and what is 'essential' is not clear."). But even under a "reasonably necessary" standard, the inherent powers doctrine "is, in a sense, a 'last ditch' doctrine." *Id.* Former Texas Supreme Court Justice Robertson helpfully notes, "The very conception of inherent power carries with it the implication that its use is for occasions not provided for by established methods . . . . When, however, these methods fail . . . then and not until then does occasion arise for the exercise of the inherent power." *Id.* at 880 n. 91 (quoting *State ex rel. Hillis v. Sullivan*, 137 P. 392, 395 (Mont. 1913)).

Third, the *Mays* concurrence concludes by specifically noting that the Legislature had granted statutory authority to the district judges to set the salary of the challenged employee:

> The judiciary's power to compel funding is not dependent on legislative authority. However, in this particular instance, the district judges did act pursuant to an express statutory mandate in setting the court reporters' salaries. TEX. GOV'T CODE ANN. § 52.051 [ ]. They acted entirely within the scope of that statute, and the statute does not require that the county commissioners court be provided with notice and hearing.

*Mays*, 755 S.W.2d at 83 (Spears, J., concurring); *see* TEX. GOV'T CODE ANN. § 52.051 (West 2013) ("An official district court reporter shall be paid a salary set by the order of the judge of the court.").

There are good reasons for a high necessity threshold before a court invokes its inherent authority. *See* Geoffrey C. Hazard, Jr., et. al., *Court Finance and Unitary Budgeting*, 81 YALE L.J. 1286, 1287–88 (1972) ("Substantial reliance upon the doctrine [of inherent power] . . . may be shortsighted and unwise."); *see also Dist. Judges of 188th Judicial Dist.*, 657 S.W.2d at 910 (stating that salary decisions left to legislative branch have "a presumption of validity" and that the "drastic" step of departing from separation-of-powers constitutional mandate "should be taken only on the basis of a detached and objective finding of essentiality"). Two particular problems are created when the judiciary sets compensation for judicial employees. First, the judiciary "usurps the appropriation power vested in the legislature." Andrew W. Yates, *Using Inherent Judicial Power in a State-Level Budget Dispute*, 62 DUKE L.J. 1463, 1466 (2013); *see id.* at 1483 ("When the judiciary's use of inherent power 'diminishes the rights and powers of a coordinate and equal branch,' the power 'ceases to act as a check on the other branches and begins to encroach on their dominion.'") (quoting Howard B. Glaser, Wachtler v. Cuomo*: The Limits of Inherent Power*, 14 PACE L. REV. 111, 137 (1994)); *see also Bd. of County Comm'rs of Weld Cty. v. Nineteenth Judicial Dist.*, 895 P.2d 545, 548 (Colo. 1995) ("While

20

the separation of powers doctrine prevents another branch of government from encroaching upon the judiciary, the same principle bars a court from intruding into the affairs of the legislative or executive branches"); *In re Salary of the Juvenile Dir.*, 552 P.2d 163, 170 (Wash. 1976) (noting that checks by one branch must not "undermine the operation of another branch"); Michael Buenger, *Of Money and Judicial Independence: Can Inherent Powers Protect State Courts in Tough Fiscal Times*, 92 KY. L.J. 979, 1031–32, 1038–39 (2004) ("[T]the judiciary must be exceedingly careful in using its inherent powers, lest it be accused of invading the province of the legislature and thereby risk undermining public support. . . . Courts must respect the authority of the legislative branch to set policy through the use of its appropriation authority, and must, unless faced with exigent circumstances, avoid the use of inherent powers to countermand legislative funding decisions."). Courts, generally, even when relying on inherent authority in making funding-related decisions, "have relied at least partially on express or implied provisions of state constitutions and statutes for their arguments. It seems safe to assume that the decisions are often made with a fairly clear idea of legislative sentiment on the issue of judicial funding," thereby avoiding "a direct confrontation with their co-equal partner in state government . . . ." Hazard, 81 YALE L.J. at 1288. Here, if we were to apply this principle and

look to the express provisions of the statute directly on point, we would allow the commissioners court to set the salary range.

"Second, an inherent-power order of this type moves a portion of the state budget outside the political arena. In bypassing the political process, courts threaten their public support and popular legitimacy." Yates, 62 DUKE L.J. at 1466, 1484 ("[W]hen a court wades into a debate about state funding priorities, whatever supposedly disinterested decision it renders becomes a political issue. In addition, courts diminish their legitimacy by removing a portion of the state budget from public debate. The budget process gives the public, through its representatives, a voice in the distribution of public resources."); Buenger, 92 KY. L.J. at 1040 ("The use of inherent power to compel funds can be viewed as antidemocratic, not only creating a potentially volatile situation vis-a-vis the legislature, but also impugning the judiciary's credibility in the eyes of the public."); *id.* at 1045 ("The idea of courts' 'ordering' the expenditure of public funds for their operations—as if they were rendering a final judgment in a disputed case—is at odds with the give-and-take of the legislative process, whose primary actors must balance competing and often amorphous interests and demands in shaping public policy."); Hazard, 81 YALE L.J. at 1289–90 ("A judicial requisition of funds from a taxing agency, such as a county or city, is in essence a judicial arrogation of discretion conferred, for better or worse, on the popularly-elected branches of government. . . . No important function of

22

government can be maintained over the long run without public debate, political commitment, and the exercise of community responsibility as expressed by bodies dependent on popular assent.").

The *Stringer* rule of allowing a district court to find that the commissioners court acted arbitrarily and then return the issue to the commissioners court to act within its discretion (instead of replacing the commissioners court's discretion with its own) allows the legislature—the branch of government best suited to determine priorities and balance interests as part of the budget process—to correct itself and reinforces the necessity threshold. While *Stringer* did not address a court's inherent authority, its rule is a wise limitation on a court's inherent authority, at least at this stage of the preceding when the commissioners have "gotten it wrong" the first time.

Other states have recognized the caution that must be exercised when the judiciary relies on its inherent authority in funding disputes with a legislative body. *See. e.g., In re Alamance Cty. Court Facilities*, 405 S.E.2d 125, 127 (N.C. 1991). There, a trial court argued that the county commissioners did not provide sufficient funds for court facilities. The court issued an order requiring the commissioners court to "immediately take steps to provide adequate facilities" and outlined exactly which facilities the commissioners had to improve. *Id.* at 127–28. The North Carolina Supreme Court vacated the order. In so doing, it reasoned, "[e]ven in the name of its inherent power, the judiciary may not arrogate a duty reserved by the

constitution exclusively to another body . . . . [D]oing what is 'reasonably necessary for the proper administration of justice' means doing *no more* than is reasonably necessary." *Id.* at 132. When the judicial branch uses its inherent authority to preserve its power, "[t]he inherent power of the court must be exercised with as much concern for its potential to usurp the powers of another branch as for the usurpation it is intended to correct." *Id.* at 133. If a court must use its inherent authority and enter into areas typically reserved to another branch, it "must proceed with a cautious and cooperative spirit into those areas . . . . " *Id.* at 133; *see Mays*, 755 S.W.2d at 83 (Spears, J., concurring) (stating that "a spirit of mutual cooperation is unquestionably the people's best guarantee of a constitutional government"). To minimize the encroachment on the legislature's authority, the judiciary must "not only recogniz[e] any explicit, constitutional rights and duties belonging uniquely to the other branch, but also seek[] the least intrusive remedy." *In re Alamance Cty. Court Facilities*, 405 S.E.2d at 133.

The Supreme Court of Iowa has similarly required the judiciary to exercise caution in asserting its inherent authority to require the Legislature to provide funding: "courts should be cognizant it is not the judicial department which historically allocates available government funds. An unreasoned demand for budgetary consideration is a threat to the image of and public support for the courts." *Webster Cty. Bd. of Sup'rs v. Flattery*, 268 N.W.2d 869, 874 (Iowa 1978). Noting

that inherent authority is a power "'which must be borne responsibly'" and "'cautiously,'" the court went on to state, "it is incumbent upon a court invoking inherent power to secure indispensable goods, facilities or services to do so in a manner which clearly communicates and demonstrates to the public the grounds for the court's action." *Id.* (quoting *O'Coin's, Inc. v. Treasurer of Worcester*, 287 N.E.2d 608, 615 (Mass. 1972)). To "legally invoke[]" its inherent authority, the judiciary must show that its actions are necessary "for the immediate, necessary, efficient and basic functioning of the court." *Id.* at 877.

As the Washington Supreme Court noted in a case where a trial court erred when it directed the county commissioners to increase the salary of the County Director of Juvenile Services:

> By its nature, litigation based on inherent judicial power to finance its own functions ignores the political allocation of available monetary resources by representatives of the people elected in a carefully monitored process . . . . The unreasoned assertion of [courts'] power to determine and demand their [courts'] own budget is a threat to the image of and public support for the courts. In addition, such actions may threaten, rather than strengthen, judicial independence since involvement in the budgetary process imposes upon the courts at least partial responsibility for increased taxes and diminished funding for other public services.

*In re Salary of Juvenile Dir.*, 552 P.2d 163, 172–73 (Wash. 1976).[16]

---

[16] The court therefore held that the judiciary in that situation bears the "highest burden of proof" of demonstrating that (1) the funds "are reasonably necessary" and (2) other methods for resolving the funding dispute have failed. *Id.* at 173–74. The proof

Based on these authorities, I believe that we should apply an "essential" standard to determine whether the district court could set a reasonable salary for the Court Manager position. But even under the less stringent "reasonably necessary" standard used in Justice Spears's concurring opinion in *Mays*, the trial judges did not meet their "heavy burden" to demonstrate that it is reasonably necessary to pay the Court Manager $113,000 annually for four main reasons.

First, the trial judges made no effort to hire anyone at the new salary; indeed, there is no evidence whether Quiroga would accept the new position—with its reduced duties—for the correspondingly reduced salary. Second, the trial judges did not present any evidence of whether the new Court Manager duties require a full-time employee or a part-time employee. It may be reasonable for the County in allocating scarce resources to pay $113,000 for the work previously performed by one person but refuse to pay roughly $178,000 for two people to perform these functions.[17] Third, the commissioners court has taken steps to provide assistance to

must be "clear, cogent, and convincing." *Id.* at 174. The court concluded that there was no "clear, cogent and convincing showing [that] respondent's determination that the salary paid to the Director of Juvenile Services was so inadequate that the court [could] not fulfill its duties." *Id.* at 175. Therefore, the mandamus order setting the employee's compensation "imposed an improper check on the function of the legislative branch of government." *Id.*

[17] $178,000 is the sum of the salaries for two positions: (1)$113,000, which is the position's former salary and salary selected by the district court, plus (2) $65,000, which is the amount paid for another county employee subsequently hired to perform some administrative duties for the County Judge that are no longer Quiroga's responsibility. The County's expense would also be increased by providing employee benefits to two employees instead of one.

the trial judges by creating the Court Manager position with the job description requested by the trial judges and agreeing that the Court Manager be hired by, report to, and be supervised solely by the trial judges. Finally, and significantly, we are not addressing a situation in which the district court has found that a commissioners court has, multiple times, acted arbitrarily in setting the salary of an employee whose services are necessary to carry out the judiciary's responsibilities and, thereby, attempted to evade review of its decision.

To the extent the commissioners court acted arbitrarily in refusing to set a reasonable salary range, it has done so only once. Giving credence to the constitutional directive that the branches of government not encroach on each other's functions, the district court should have returned the issue of setting Quiroga's salary to the commissioners court to be determined in accordance with its legislative functions, rather than performing that function itself. In other words, it was not "reasonably necessary," at this stage of the proceeding, for the district court to set the Court Manager's salary; it should have first allowed the commissioners court an opportunity to correct its mistake and set a reasonable salary. *See Vondy*, 620 S.W.2d at 109; *cf.* Yates, 62 DUKE L.J. at 1463 (arguing state courts should invoke inherent power against state legislatures in budget disputes "only under a standard of absolute necessity to perform the duties required by federal and state constitutional law" because such "standard respects the separation of powers and preserves the

27

judiciary's public legitimacy"). Presenting this opportunity to the commissioners court, which did make an effort—albeit an unsuccessful one—to set a reasonable salary for the Court Manager position, would show the caution the judicial branch should take before encroaching on traditional legislative functions.[18]

In conclusion, when the district court concluded that the commissioners court arbitrarily set too low of a salary for the new Court Manager position, it should have ordered the commissioners court to perform its statutory duty and set a new—and reasonable—salary range for the position. *Cf. Douthit v. Ector Cty*, 740 S.W.2d 16, 18 (Tex. App.—El Paso 1987, writ denied) (ordering trial court to mandate commissioners court to establish reasonable amount of compensation for elected constable when commissioners court abused discretion by paying $1 annual salary).

---

[18]    Evidence was presented at the temporary injunction hearing that the "Court Systems continued to operate" for many months without the Court Manager position being filled. This testimony arguably provides some support for the County's position that the Court Manager role was not "reasonably necessary" for the efficient operation of the judiciary.

The trial judges, who bore the burden of proof, failed to offer any testimony regarding whether the courts were operating efficiently without anyone filling this role, the judicial process was significantly slowed, or other judicial tasks were not being accomplished because the position was unfilled. Nevertheless, the County itself recognized the necessity of the position when it agreed to the trial judges' request twenty years ago and again more recently to fill this position. Thus, while the "continued to operate" testimony presents some evidence that the Court Manager position was not reasonably necessary, the district court was free to disregard it in ordering the County to re-establish the position. The trial judges' failure to present any testimony regarding court inefficiencies, however, supports my conclusion that it was not necessary to set the Court Manager's salary at this time.

By setting what it believed was a reasonable salary, the district court "substituted its own judgment" on the "fiscal policy of the county" for that of the commissioners court. *Hooten*, 863 S.W.2d at 532–33. Such an attempt exceeds a court's statutory supervisory authority and is not supported by the judiciary's inherent power.

## 2. Abuse of Discretion

In addition to this legal error, the district court abused its discretion in setting the Court Manager's salary as the same salary as the Court Director's based on the facts.

As the applicants for a temporary injunction, the trial judges bore the burden of proof to establish a "'probable right of recovery,' sometimes referred to as 'likelihood of success on the merits.'" *Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Thus, in seeking an order of reinstatement to a different position than previously existed, the trial judges had to show, not only that the salary set by the commissioners court for this new positon was arbitrary, but also that the previous salary of $113,000 was the reasonable salary for this new position. The trial judges offered no such evidence except for the salary survey they performed. But that survey did not reach any conclusion regarding what would be a reasonable salary.

The trial judges argue that the district court issue did not err in setting this salary because the temporary injunction was preserving the status quo. I disagree for

two reasons. First, the injunction did not preserve the status quo; it created a new position with new duties. The temporary injunction implemented two changes in Quiroga's position: first, during the pendency of the suit, Quiroga would be supervised only by the Local Administrative Judge and second, she would no longer perform "any duties relating to the law library, pretrial release, or recovering costs."[19]

The new job, therefore, involves considerably less responsibility than the old job. According to County Judge Henry, the Court Manager's position handles approximately 40% of the (old) Court Director's duties and supervises 25% of the employees. Drummond, Henry's chief of staff, testified that these responsibilities "were a significant portion of her job" before that role was split and retitled Court Manager. Commissioner Ryan Dennard also testified that her responsibility for collections was a "core duty" and one in which Quiroga's performance was deficient. The trial judges did not controvert this testimony. The staff structure also suggests that the job responsibilities were significantly reduced. In her prior position, Quiroga had 16 direct reports; in the new position, she would have 4 or 5, with the remainder reporting to the commissioners.

---

[19]    Quiroga's prior job description states that she was to exercise direct supervision over an Administrative Coordinator, Law Library Coordinator, Court Services Coordinator, Pretrial Release Supervisor, and Court Communications Coordinator, as well as supervise all department employees.

The district court's appointment of Quiroga to act in what I have called the Court Manager position (the Judicial Adminstration Director position less the responsibilities discussed above) did not preserve the status quo. She had not occupied that position for almost a year at the time of the injunction. Whatever the merits of the old salary for the position's old responsibilities, the district court altered those responsibilities without altering the compensation. Under the district court's order, Quiroga would get all of the pay for only part of the work.

Because of the reduction in the Court Manager's duties and supervisory role, the district court abused its discretion by ordering County Judge Henry to direct the County Treasurer to pay Quiroga her prior salary in this new role and thereby substituting its salary opinion for that of the commissioners court.

For these reasons, I would reverse the district court's order that Quiroga be paid the same salary as her last date of employment in the old position.

**Indispensable Parties**

While I agree that a district court generally may issue a temporary injunction in the absence of otherwise indispensable parties, I have some concerns about applying that principle to a governmental body. But, because the parties at this time are only disputing one issue—Quiroga's salary—and the County did not raise the indispensable-parties issue in the district court, it is unnecessary to decide if this

31

general rule applies here, given that I have already concluded that the portion of the order setting her salary was invalid.

I do want to emphasize that the Court's opinion does not address whether the other commissioners are indispensable parties before the trial on the merits and the request for a permanent injunction.[20] Nor does the Court address the enforceability of the injunction by contempt.

Any permanent injunction granted without naming the other commissioners as parties may create difficulties in enforcement and constitutional problems because each county commissioner is independently elected and independently votes on the budget. The injunction orders not only County Judge Henry, but, all those "acting in concert" with him, to reemploy Quiroga and to direct the treasurer to pay Quiroga her prior salary. It also orders County Judge Henry to provide a copy of the injunction "to each County Commissioner." But County Judge Henry is only one of five commissioners and cannot unilaterally act for the entire court except in those aspects in which he has authority to do so. The trial judges have not presented any evidence or legal authority suggesting that County Judge Henry has the unilateral

---

[20]  *See Vondy*, 620 S.W.2d at 105 (noting that, in mandamus proceeding brought by elected constable against commissioners court, absence of one member of court was not fundamental error when no objection was made to his absence in trial court because majority of commissioners were made parties individually and commissioners court itself was named party).

authority to take either action. The Court does not address whether the district court's order can compel all of the commissioners to vote in any particular way under the guise of "acting in concert" with County Judge Henry.

**Conclusion**

The Court, quoting from Justice Spears' concurring opinion in *Mays*, correctly observes that the legislative and judicial branches need to cooperate in determining the amount of funding necessary to operate the courts. Slip op. at 75 (quoting *Mays*, 755 S.W.2d at 82–83 (Spears, J., concurring)); *see also Dist. Judges of 188th Judicial Dist.*, 657 S.W.2d at 909 (stating our system of checks and balances requires "harmonious cooperation" among three branches of government). Arbitrarily denying necessary resources to the judiciary equally weakens the public's support and the legitimacy of those holding the purse strings as do excessive demands by the judiciary made under the umbrella of inherent authority. *See* 62 DUKE L.J. at 1466, 1484. Cooperation is imperative under our system of equal branches of government.

Here, that cooperation ceased when the parties could not agree on a salary for an employee that the trial judges wished to retain while the commissioners questioned her competency. But the issue—and what all parties should have been focused on—was the relatively straightforward question of a reasonable salary for the specified list of duties that would be assigned to this new position, a list of duties that both sides had already approved.

33

Rather than taking steps to resolve the disagreement with objective data, such as, perhaps, retaining a qualified expert to evaluate pay for similar positions in other areas, each side offered selective data, accumulated using methods that would never come close to satisfying a standard of reliability under *Daubert* and its progeny. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995). And a stand-off ensued.

Corporate boards—both for-profit and non-profit—routinely rely on outside, objective experts to determine compensation for certain corporate employees to ensure that the board complies with its fiduciary responsibilities. The cost of such a study—or even two if both sides cannot agree on an independent expert—would probably be less than the attorney's fees that will be generated in this dispute. More importantly, the cooperation needed for the judiciary to operate effectively for the public good requires, at a minimum, that a simple employment issue not result in turf wars and waste of public funds when common ground abounds. Admittedly, the issue of what is a reasonable salary for compensating employees in government service is more complicated than it is in the private sector because of issues surrounding tax revenue and spending priorities, but absent some revenue issue, this dispute should be resolved expeditiously in the spirit of cooperation called for by the Court. Failing that, the commissioners court should be given another opportunity to determine a reasonable salary for the new positon requested by the trial judges.

Harvey Brown
Justice

Panel consists of Justice Jennings, Higley, and Brown.

Brown, J., concurring and dissenting